Department of Public Welfare *vs.* J. K. B.

Suffolk. May 9, 1979. — August 16, 1979.

Present: Hennessey, C.J., Braucher, Wilkins, Liacos, & Abrams, JJ.

*Due Process of Law*, Care and protection of minor. *Parent and Child*, Care and protection of minor. *Adoption*.

An indigent parent is constitutionally entitled to court-appointed counsel in a proceeding to dispense with parental consent to adoption under G. L. c. 210, § 3 (*b*). [2-5]

An attorney who is appointed to represent an indigent parent in a proceeding to dispense with parental consent to adoption under G. L. c. 210, § 3 (*b*), is entitled to be paid by the Commonwealth unless the legal services were rendered on behalf of the parent prior to July 1, 1979, in which case the county is responsible. [6]

Petitions filed in the Suffolk Division of the Probate and Family Court Department on July 11, 1978, and October 20, 1978, respectively.

Questions of law were reported to the Appeals Court by *Warner*, J. The Supreme Judicial Court granted a request for direct review.

*Rose Marie Adamo* for the defendant.

*Maureen Dewan*, Assistant Attorney General, for the Department of Public Welfare.

Abrams, J. We granted the defendant's application for direct appellate review to consider whether an indigent parent is entitled to counsel appointed at State expense to represent him or her when contesting a petition to dispense with

parental consent to adoption brought under G. L. c. 210, § 3(*b*). We conclude that an indigent parent is entitled to court-appointed counsel in proceedings brought to dispense with parental consent to adoption. G. L. c. 210, § 3.

The Department of Public Welfare (department) brought two petitions under G. L. c. 210, § 3, to dispense with parental consent to the adoption of two minor children, both daughters of the defendant.[1] The defendant through a legal aid organization filed motions for the appointment and payment of counsel, and a supporting affidavit of indigency.[2]

A Probate Court judge found the mother to be indigent. He allowed her motions for the appointment and payment of counsel on the ground that appointed counsel was mandated in these circumstances by the Fourteenth Amendment to the United States Constitution and by art. 10 of our Declaration of Rights. He did not, however, enter an order appointing counsel, but instead reported three questions raised by the defendant's motions to the Appeals Court pursuant to G. L. c. 215, § 13. Those questions are:

"1. In the circumstances of these cases, is the mother constitutionally entitled to court-appointed counsel to represent her throughout the proceedings; and, if so,

"2. Whether such counsel is entitled to compensation for services and expenses from public funds; and, if so,

"3. What is the appropriate governmental entity which may be directed to make payment therefor?"

1. The defendant's claim is that she is entitled to be represented by counsel in judicial proceedings brought to termi-

---

[1] The paternity of these children has not been established by law. Notice of the petitions was sent to the man identified by the mother as the natural father, but he made no attempt to appear in either action, and has not participated in this appeal.

[2] The Probate Court judge found that due to rising caseloads legal aid organizations are unable or unwilling to continue to represent all such indigent parents seeking legal services.

nate her parental rights.[3]  She contends that the State and Federal Constitutions mandate the appointment of counsel if an indigent parent chooses to contest the department's decision permanently to deprive him or her of his or her children.  See Fourteenth Amendment to the Constitution of the United States, and art. 10 of our Declaration of Rights.  We agree.

We have recognized before that "loss of a child may be as onerous a penalty as the deprivation of the parents' freedom." *Custody of a Minor (No. 1)*, 377 Mass. 876, 884 (1979).  Our decisions, and those of the United States Supreme Court, leave no doubt that "[t]he rights to conceive and to raise one's children" are "essential . . . basic civil rights of man . . . far more precious . . . than property rights." *Stanley* v. *Illinois*, 405 U.S. 645, 651 (1972).  The interest of parents in their relationship with their children has been deemed fundamental, and is constitutionally protected.  See, e.g., *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 376 Mass. 252, 264 (1978); *Custody of a Minor*, 375 Mass. 733, 747-748 (1978); *Quilloin* v. *Walcott*, 434 U.S. 246, 255 (1978); *Stanley* v. *Illinois, supra*; *Meyer* v. *Nebraska*, 262 U.S. 390, 399 (1923).

Before the State "deprive[s] a legitimate [*sic*] parent of all that parenthood implies," the requirements of due process must be met.  *Armstrong* v. *Manzo*, 380 U.S. 545, 550 (1965).  The extent of procedural due process which must be afforded in any situation varies with the nature of the

---

[3] Before reaching the merits, we respond to the department's contention that the judge reported this case prematurely, and that, therefore, we should refrain from deciding the constitutional question presented.  Although the judge allowed the motion for counsel, he has not yet appointed counsel, perhaps indicating that he doubted his authority to do so.  For the defendant to be forced to trial without counsel would "so affect the merits of the controversy" as to justify an interlocutory report.  See G. L. c. 215, § 13.  In any event, the questions are of considerable public importance, and have been fully argued and briefed.  We believe it appropriate to express our views on these matters at this time.  See *Fiorentino* v. *Probate Court*, 365 Mass. 13, 16 n.6 (1974); *Commonwealth* v. *Haddad*, 364 Mass. 795, 797 (1974).

private and governmental interests at stake (see, e.g., *Goldberg* v. *Kelly*, 397 U.S. 254, 262-263 [1970]), but basic to due process is the right to be heard "at a meaningful time and *in a meaningful manner*" (emphasis added). *Armstrong* v. *Manzo*, *supra* at 552. An indigent parent facing the possible loss of a child cannot be said to have a meaningful right to be heard in a contested proceeding without the assistance of counsel. This is particularly so where the State, her adversary, is not only represented by counsel but also has vastly superior resources for investigation and presentation of its case.

The petition may well involve complex questions of fact and law, and require the marshalling and rebutting of sophisticated expert testimony. These aspects of adjudication underscore the necessity of affording appointed counsel to those defendant parents who contest the proceedings. Provision of appointed counsel not only safeguards the rights of the parents, but it assists the court in reaching its decision with the "utmost care" and "an extra measure of evidentiary protection," required by law. See *Custody of a Minor (No. 2)*, 378 Mass. 712, 721 (1979); *Custody of a Minor (No. 1)*, 377 Mass. 876, 877, 884-885 (1979). The appearance of counsel for the parties also enhances the appearance of fairness in the trial process. See IJA-ABA Joint Commission on Juvenile Justice Standards, Standards Relating to Counsel for Private Parties 1.1 (1976): "The participation of counsel on behalf of all parties subject to juvenile and family court proceedings is essential to the administration of justice and to the fair and accurate resolution of issues at all stages of those proceedings."

Our conclusion that indigent parents have a constitutional right to appointed counsel, if they wish,[4] before their parental rights are terminated is buttressed by the fact that

---

[4] Henceforth, indigent parents should be informed that if they wish to contest the department's decision counsel will be provided unless they choose to relinquish this right. Of course, an indigent parent must timely make his or her decision known to the court.

virtually every other court which has faced this issue has reached the same conclusion. See *In re Rodriguez*, 34 Cal. App. 3d 510, 514 (1973);[5] *Danforth v. State Dep't of Health & Welfare*, 303 A.2d 794, 795 (Me. 1973); *Reist v. Bay Circuit Judge*, 396 Mich. 326, 346 (1976); *In re Friesz*, 190 Neb. 347 (1973); *Crist v. New Jersey Div. of Youth & Family Servs.*, 128 N.J. Super. 402, 415 (1974); *Matter of Ella B.*, 30 N.Y.2d 352, 357 (1972); *In re Adoption of R.I.*, 455 Pa. 29, 33 (1973); *State v. Jamison*, 251 Or. 114, 117 (1968); *In re Luscier*, 84 Wash. 2d 135, 138 (1974); *State ex rel. Lemaster v. Oakley*, 157 W. Va. 590, 599 (1974); *Cleaver v. Wilcox*, 499 F.2d 940, 945 (9th Cir. 1974); *Davis v. Page*, 442 F.Supp. 258, 263 (S.D. Fla. 1977); *Smith v. Edmiston*, 431 F.Supp. 941 (W.D. Tenn. 1977).

Recognition of important parental rights does not change the crucial fact that the focus of the proceeding should be on the best interests of the child. See *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631 (1975). Although the law recognizes that "the custody, care and nurture of the child reside first in the parents" (*Prince v. Massachusetts*, 321 U.S. 158, 166 [1944]), where those parents have failed to fulfil the duties of parenthood, their rights are no longer paramount. As we have pointed out, "the task is not simply to find an accommodation between the rights of the individual parents and the interests of society. . . . The rights and need of the child must be considered as well. . . . Accordingly, in such circumstances, the balance to be struck is more complex." *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 376 Mass. 252, 265-266 (1978). See *Custody of a Minor (No. 2)*, 378 Mass. 712, 721-722 (1979); *Purinton v. Jamrock*, 195 Mass. 187, 199-201 (1907).[6]

---

[5] In effect overruling *In re Robinson*, 8 Cal. App. 3d 783 (1970), cert. denied sub nom. *Kaufman v. Carter*, 402 U.S. 954, 964 (1971).

[6] The IJA-ABA Joint Commission on Juvenile Justice Standards points out that the interests of the parent or those of the State agency may not necessarily "coincide entirely with the child's." Commentary to Standards Relating to Counsel for Private Parties 2.3(b) (1976). We need not

2. The second question reported asks if attorneys who are appointed in G. L. c. 210, § 3, proceedings are entitled to compensation. The department has taken the position that if appointed counsel are required in these cases, the courts have the power to order compensation for them. This is entirely consistent with our prior cases, indicating that (1) a judge has the power to appoint and order compensation for an attorney for a minor seeking an abortion, *Baird* v. *Attorney Gen.*, 371 Mass. 741, 762-763 (1977); (2) a judge has the power to contract for expenses "reasonably necessary for the operation of his court," *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 509 (1972); and (3) attorneys appointed to represent indigents are entitled to compensation even in the absence of explicit statutory authorization, *Abodeely* v. *County of Worcester*, 352 Mass. 719, 723-724 (1967). The answer to the second question is that appointed attorneys are entitled to be paid.

3. The final question — which governmental entity should pay — is easily answered. Statute 1978, c. 478, § 333 (the Court Reorganization Act) provides that as of July 1, 1979, all costs of the judicial system are to be borne by the Commonwealth, including costs for assignment of counsel. See G. L. c. 29A, § 1. Prior to that date, each county had responsibility for most costs arising from the operation of its Probate Court, including payment of appointed guardians ad litem (see G. L. c. 215, § 56A, *prior* to the 1978 amendment, St. 1978, c. 478, § 333). By analogy, the county would be responsible for costs of appointed counsel incurred prior to July 1, 1979.

We conclude that the answers to the questions reported are that (1) an indigent parent has a constitutional right to court-appointed counsel in a contested proceeding to terminate parental rights; (2) court-appointed counsel is entitled to be paid by the Commonwealth unless the legal services

decide whether, or in what circumstances, it might be necessary for the judge to appoint independent counsel for the child. See *O'Coin's, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 509 (1972).

are rendered on behalf of an indigent parent prior to July 1, 1979, in which case the county is responsible.

The case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*