## ADOPTION OF EUGENE.

Franklin. February 2, 1993. - June 8, 1993.

Present: LIACOS. C.J., ABRAMS, NOLAN. O'CONNOR, & GREANEY. JJ.

*Adoption*, Dispensing with parent's consent, Standing. *Parent and Child*, Dispensing with parent's consent to adoption. *Practice, Civil*, Relief from judgment, Standing.

In a proceeding to dispense with the need for parental consent to the adoption of a child under G. L. c. 210, § 3, the judge erred in denying the father the opportunity to participate in the proceeding on the ground that he lacked standing, where the father had no notice there was a challenge to his participation on that basis. [435-436]

A father was entitled to relief under Mass. R. Civ. P. 60 (b) (1), in order to be heard on the merits in a proceeding under G. L. c. 210, § 3, to dispense with his consent to the adoption of his son, in circumstances where the judge had incorrectly denied the father's participation on the ground of lack of standing; the case was remanded for further proceedings. [436-438]

PETITION filed in the Franklin Division of the Probate and Family Court Department on October 24, 1990.

Pretrial motions were heard by *Marie E. Lyons*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robin L. Stolk* for the father.

*Virginia A. Peel* for Department of Social Services.

ABRAMS, J. The father of a minor child appeals from an order[1] of the Probate and Family Court judge denying him

---

[1] The parties have treated the order denying the father standing to object to the G. L. c. 210, § 3, petition as an appealable judgment. Although there are multiple parties in this litigation, there was no determination by the judge that there was "no just reason for delay" and that judgment should enter. See Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). The father appealed and a single justice of the Appeals Court stayed all further

standing to contest a petition to dispense with the need for his consent to the adoption of his son. See G. L. c. 210, § 3 (1990 ed.). Neither parent filed a timely objection. Three months after the return date, separate counsel were appointed for the mother, the father, and the child, in response to the Department of Social Services' (DSS) motion for appointment of guardians ad litem. In July, 1991, each parent filed an objection to the petition. In April, 1992, the judge denied the father standing to challenge the petition because his objection was filed late. The judge ordered a guardian ad litem be appointed for the mother to determine whether "the biological mother's condition interfered with her ability to comprehend the petition and the time period allowed for objections." The father sought reconsideration of the ruling, which was denied. The father appealed and sought a stay of proceedings from a single justice of the Appeals Court pending appeal. The stay was allowed, and this appeal was allowed to proceed. See note 1, *supra*. We transferred the matter to this court on our own motion. For the reasons stated in this opinion we reverse the order denying the father standing, and remand for further proceedings.

We set forth the uncontested facts.[2] The child was born on August 5, 1989, while his mother was a patient at Northampton State Hospital. At that time the mother and father were not married. Both parents have a history of mental illness. The father was not named as the father on the child's birth certificate.

On August 8, 1989, the DSS filed a care and protection petition on the child's behalf in the District Court Department. See G. L. c. 119, § 24 (1990 ed.). At that time an attorney and a guardian ad litem were appointed for both the mother and the father. Temporary custody was granted to the DSS. The DSS placed the child in foster care. In No-

---

proceedings, see Mass. R. A. P. 6 (a), as amended, 378 Mass. 930 (1979), and allowed the father's appeal to proceed. In these circumstances we shall treat the order as an appealable judgment.

[2]The judge made no findings of fact. We set forth the facts that the parties state are not contested.

vember, 1989, the DSS placed the child in a preadoptive foster home.

On October 24, 1990, the DSS filed a petition in the Probate and Family Court pursuant to G. L. c. 210, § 3 (1990 ed.), to dispense with parental consent on any petition for adoption sponsored by the DSS. The petition named the appellant as "putative father."[3] On its petition the father's address is listed as "c/o DMH services coordinator [with a named crisis team in a western Massachusetts city]."[4] At that time the mother was hospitalized at Northampton State Hospital. The father was hospitalized shortly after being served.[5]

On December 3, 1990, eight days before the return date, the DSS filed motions for appointment of guardians ad litem for each parent, based on their history of mental illness, noting that a guardian ad litem had been appointed for the father in the child's August, 1989, care and protection proceedings. The motions were not heard until March 12, 1991, three months after the return date. Another judge appointed counsel for both parents. The judge also appointed counsel for the child, and continued the matter for a pretrial conference on April 17, 1991. The judge did not appoint a guardian ad litem for either parent as requested by the DSS.

On July 5, 1991, seven months after the return date, the mother filed an objection in the form of an answer to the DSS's petition to dispense with parental consent to adoption. On July 10, 1991, the father filed a notice of objection to the DSS's petition.[6] Both documents were signed by the parents' attorneys, not by the parents themselves.

---

[3]General Laws c. 210, § 4A (1990 ed.), provides for the rights of a father of a child born out of wedlock when the father notifies the DSS of his claim of parental responsibility, and when no judgment dispensing with the need for the father's consent has issued pursuant to § 3.

[4]At the hearing in March, 1992, the father's attorney stated the father was served in-hand at his home, a different address.

[5]The record does not indicate the date of that hospitalization.

[6]On August 1, 1991, the father's attorney requested by letter that the DSS send him the DSS's parental responsibility claim form, mandated by G. L. c. 210, § 4A (1990 ed.).

The parents were married on September 1, 1991. On October 29, 1991, and again on December 18, 1991, the parties and their attorneys appeared before the Probate Court on several motions. There was on-going communication between the DSS and the parents throughout this entire period.

On March 26, 1992, the parties appeared before the Probate Court for a pretrial conference. The probate judge, on her own motion, questioned the parents' right to be heard given their failure to file timely objections to the DSS's petition; the judge also questioned how another judge could have appointed counsel based on the DSS's motion for the appointment of guardians ad litem without objections having been timely filed. The parents' attorneys, attempting to cure any procedural defect, filed motions for leave to file late objections nunc pro tunc on the ground that neither parent had understood the nature of the DSS's petition. The judge denied all motions to cure the procedural flaws. All parties wanted a trial as soon as possible.[7]

On April 2, 1992, the probate judge revoked all the orders pertaining to the father (including the appointment of counsel) on the ground that the father did not have standing to object to the G. L. c. 210, § 3, petition because he filed his objection late. In the same order the judge appointed a guardian ad litem for the mother to determine if her mental

---

[7]At a subsequent hearing the DSS stated "that the [DSS] is prepared either way to go forward, we are prepared to go forward with the trial as to both parents; even if the father is not allowed to participate in the proceedings, I would have to present evidence, since both parties are married and living in the same home, I'm going to have to look at [the father] as a potential father if the child were returned to that home. And I am prepared to address his ability, either as a stepfather or as the natural father of this child. And I would ask this court to let us proceed to trial so that [the child] can either be sent home or released for adoption.

"And I echo what [counsel for the father] has said, that there was an extensive psychological evaluation done on both parents, and in preparation of the trial, and the [DSS] would like to proceed to trial for the benefit of [the child]."

The attorney for the child stated that he had no objection to the motion before the court: "The only position that I have at this time, your Honor, is to once again renew our request for trial as soon as possible."

illness prevented her from understanding the petition and the requirements of filing a timely objection. On April 7, 1992, the father executed a voluntary acknowledgment of paternity pursuant to G. L. c. 209C, § 11. On May 6, 1992, the trial judge approved the voluntary acknowledgment of paternity. At the same hearing, the judge allowed the mother's motion to file a late objection based on the report of the guardian ad litem the judge had previously appointed. The judge denied the father's motions to file a late objection, to reconsider the April 2, 1992, order, and to stay the proceedings pending the father's appeal.

*Discussion.* Parents have a constitutionally protected interest in maintaining a relationship with their children. See *Custody of Eleanor*, 414 Mass. 795, 801 (1993); *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3 (1979); *Stanley* v. *Illinois*, 405 U.S. 645, 651 (1972). The "loss of a child may be as onerous a penalty as the deprivation of the parents' freedom." *Custody of a Minor (No. 1)*, 377 Mass. 876, 884 (1979). "Before the State 'deprive[s] a . . . parent of all that parenthood implies,' the requirements of due process must be met. *Armstrong* v. *Manzo*, 380 U.S. 545, 550 (1965). The extent of procedural due process which must be afforded in any situation varies with the nature of the private and governmental interests at stake . . . but basic to due process is the right to be heard 'at a meaningful time and in a meaningful manner.' *Armstrong* v. *Manzo, supra* at 552." (Citation omitted.) *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3-4 (1979).

The father contends that the judge erred in not allowing the attorneys to cure the procedural missteps.[8] The father asserts that his challenge to the DSS petition should have been decided on the merits. He asks that we vacate the "judgment," see note 1, *supra*, Mass. R. Civ. P. 60 (b) (1), 365

---

[8]The judge noted that the objections were filed late, there had been no motion to be allowed to file objections late, and the objections had not been signed by the parents, but by the attorneys.

Mass. 828 (1974), and allow him to participate in the G. L. c. 210, § 3, proceedings.

The DSS defends the judge's ruling contending that the father's failure to file a timely objection to its petition was not due to "excusable neglect."[9] The DSS contends that the record is devoid of any basis for vacating the judgment because of "excusable neglect." The judge did not specifically rule that the father's late objection was not the result of excusable neglect. That is, however, the import of her ruling. The short answer is that the father had no notice that there was a challenge to his participation in the G. L. c. 210, § 3, proceedings. "Rule 60 (b) (1) allows relief from a judgment on grounds of 'mistake, inadvertence, surprise, or excusable neglect.' Entry of judgment based on the failure of the plaintiff to be given notice of the defendant's motion for summary judgment appears to fall within this subsection. See *Blois* v. *Friday*, 612 F.2d 938 (5th Cir. 1980) (rule applicable where attorney fails to file change of address, leading to lack of notice and default judgment). Moreover, this court has held that, in some circumstances, lack of notice 'constitutes a sufficiently fundamental flaw' to make it 'any other reason justifying relief from the operation of the judgment,' within the meaning of rule 60 (b) (6). *Chavoor* v. *Lewis*, 383 Mass. 801, 806 (1981). . . . We conclude that lack of notice is a proper basis for relief under rule 60 (b)." (Footnotes omitted.) *Bushnell* v. *Bushnell*, 393 Mass. 462, 474-475 (1984). Because of lack of notice to the father that his standing would be challenged, it was error to remove the father from the G. L. c. 210, § 3, proceedings on the basis of standing.

"Excusable neglect" requires consideration of a number of factors. The criteria for determining the propriety of vacat-

---

[9]The DSS also argues that the father failed to acknowledge his paternity in the manner required by G. L. c. 201, § 4A. There was no hearing as to whether the father had by word or deed acknowledged paternity. See G. L. c. 210, § 4A. The judge did not rule on that issue. It is, therefore, not before us, and we do not reach or decide that issue. We note that the DSS always recognized the natural father as a person to be included in proceedings concerning the minor child.

ing a default judgment include "(1) timeliness [of the moving party's effort to cure a procedural flaw], (2) the existence of exceptional circumstances justifying extraordinary relief, and (3) the absence of unfair prejudice to the opposing party." *Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59* v. *Superline Transp. Co., Inc.*, 953 F.2d 17, 20 (1st Cir. 1992). See *Berube* v. *McKesson Wine & Spirits Co.*, 7 Mass. App. Ct. 426, 430-431 (1979) (also citing factors to consider). In this case there has been no trial on the merits, and the trial would not have been delayed by correcting the procedural defects. The DSS was required to investigate, and had investigated, the father's suitability as a parent, as the mother and father had married in September, 1991. See note 7, *supra*. Thus delay was not a factor. By contrast, the father stands to lose his constitutionally protected interest in his son without a hearing on the merits. "Rule 60(b) is remedial in character and subject to a liberal interpretation and application in a situation where the mischief leading to the judgment occurs at the pretrial stage." *Berube* v. *McKesson Wine & Spirits Co.*, *supra* at 429.

"[W]hen deciding whether to set aside entries of default and default judgments courts favor allowing trial on the merits." *Federal Deposit Ins. Corp.* v. *Francisco Inv. Corp.*, 873 F.2d 474, 478 (1st Cir. 1989). "[I]t is the policy of the law to have every case tried on its merits. . . . When satisfied of the good faith of the applicant moving to set aside a default, the court should be liberal in its consideration of the application." *Manos* v. *Fickenscher*, 62 A.2d 791, 793 (D.C. 1948). See *Schwab* v. *Bullock's, Inc.*, 508 F.2d 353, 355 (9th Cir. 1974). The judge should not have denied the father standing to object to the DSS's petition, but should have decided the case on the merits.

We reverse the order denying the father standing to challenge the G. L. c. 210, § 3, proceedings and remand to the Franklin Probate and Family Court for further proceedings

in which the father shall have standing to object to the DSS's petition.[10]

*So ordered.*

---

[10]The parties have argued constitutional issues at length. The judge did not rule on any constitutional issue. We do not reach or decide any constitutional issue.