ADOPTION OF HUGH
(and a companion case).

Nos. 92-P-1761 & 92-P-1762.

Hampden. February 17, 1993. - September 22, 1993.

Present: PERRETTA. IRELAND. & GREENBERG. JJ.

*Adoption*, Dispensing with parent's consent. *Parent and Child*, Dispensing with parent's consent to adoption. *Due Process of Law*, Notice. *Practice, Civil*, Relief from judgment.

In a proceeding by the Department of Social Services to dispense with the need for parental consent to the adoption of two minor children, the department's notice to the father, which was given by publication in a newspaper, did not satisfy the constitutional requirements of due process [348-350]; however, where the hearing on the father's motion to vacate the judgments afforded him an opportunity to be heard in a meaningful manner on the merits of the petitions, and he did not show a chance of prevailing thereon, the judge, in the circumstances, did not abuse her discretion in concluding that the judgments should not be reopened [351-354].

PETITIONS filed in the Hampden Division of the· Probate and Family Court Department on January 3, 1989.

The cases were heard by *Marie E. Lyons*, J., and a motion for relief from judgment was also heard by her.

*Robert J. Danie* for the father.

*Virginia A. Peel* for Department of Social Services.

GREENBERG, J. Almost sixteen months after entry of judgments granting petitions brought by the Department of Social Services (department) to dispense with consent to the adoption of two minor children, see G. L. c. 210, § 3, the biological father — proceeding pro se — moved to vacate the judgments. A hearing was held before the judge of the Probate Court who originally tried the matters; by that time the

father was represented by counsel. The judge denied the motion for relief from judgments, and the father has appealed.[1]

The father claims that the judgments must be reopened because the department failed to notify him of the proceedings (notice was by publication) and that with more diligence the department could have served him at his mother's residence. The father asserts "inexcusable neglect" on the part of the department in failing to serve him at his mother's residence, see Mass.R.Civ.P. 60(b)(1), 365 Mass. 828 (1974). His motion, however, is pursuant to Mass.R.Civ.P. 60(b)(6), 365 Mass. 828 (1974), because the one-year period for granting relief under rule 60(b)(1), on the ground of "excusable neglect" had expired; under Mass.R.Civ.P. 60(b), that one-year period cannot be extended.

Relief under Mass.R.Civ.P. 60(b)(6) is limited to instances "when the vacating of judgments is justified by some reason *other* than those stated in subdivision (1) through (5)" (emphasis original). *Chavoor* v. *Lewis*, 383 Mass. 801, 806 (1987). See also *Artco, Inc.* v. *DiFruscia*, 5 Mass. App. Ct. 513, 517 (1977). Lack of notice has been held to constitute "a sufficiently fundamental flaw to remove [a] case from the parameters of subdivision (1) of rule 60(b)," giving a trial judge, in the exercise of her discretion, the power to vacate a judgment on a motion brought more than one year later. *Chavoor* v. *Lewis*, 383 Mass. at 806-807.

Moreover, parents have a constitutionally protected interest in maintaining a relationship with their children. *Armstrong* v. *Manzo*, 380 U.S. 545, 550 (1965). *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. 1, 3-4 (1979). *Adoption of Eugene*, 415 Mass. 431, 435 (1993). Before that relationship is severed, due process requires that there be notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo*, 380 U.S. at 552. *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. at 3-4. *Adoption of Eugene*, 415 Mass. at 435.

---

[1]The judge gave no reasons for the denial.

Thus, we are required to decide whether the notice to the father met the requirements of due process. If it did not, we must, of necessity, consider whether the hearing following the motion to vacate the judgments offered him an adequate opportunity to protect his rights, see *Armstrong* v. *Manzo*, 380 U.S. at 550-552, and whether the judge's exercise of discretion in refusing to vacate the judgments was proper. See *Chavoor* v. *Lewis*, 383 Mass. at 806-807; *Parrell* v. *Keenan*, 389 Mass. 809, 814-815 (1983).

We summarize the procedural history. The biological father was separated from the mother in 1983 (or earlier) and divorced in 1985. He has not seen the children in at least nine or ten years. When the children were removed from their mother's home in 1988, they had been physically and sexually abused by her second husband. The department mistakenly reported the father's last known address as the Massachusetts Correctional Institution (M.C.I.), Cedar Junction; efforts to make service of the petitions at that address were unsuccessful. In January, 1989, the court authorized service of the petitions to be made by publication in a newspaper. There was no appearance by, or on behalf of, the father at the trial. The mother filed an objection and contested both of the petitions.

The father claimed that a more diligent effort would have resulted in finding him at his mother's residence in Springfield. He submitted an affidavit in support of his motion to vacate judgments to the following effect: that he initially learned of the allowance of the petitions in May, 1992, through a relative; that he did not learn of the proceedings through the local newspaper because he could not read; that he has been a resident of Springfield most of his life except for short absences when he lived in nearby communities; that he had made repeated attempts to visit the children, but his former wife, the mother, refused to permit him to see them; that his former wife knew his address at all times; and that after becoming aware of the allowance of the petitions he contacted the department, spoke with the assigned case worker, and immediately sought appointment of counsel.

Incorporated by reference into the affidavit was a psychological assessment prepared by a clinical psychologist who tested the father to assess his over-all intellectual functioning and emotional stability. The results of this assessment indicated that he was functioning at borderline to average levels when compared to others in his age group. In the view of the psychologist, the over-all results of the assessment made it "seem unlikely that [the father] would have recognized a legal notice in the newspaper."

In addition, the father's attorney pointed out at the hearing on the motion to vacate judgments that the department records included a G. L. c. 51A investigation report dated August, 1983, which listed the father as the person whose call to the department instigated the department's investigation of possible abuse or neglect of the children. Contained in the records was a notation of the father's residence, the identical address, the attorney represented, where the father lived from 1983 until 1990. The G. L. c. 210, § 3, petitions were filed in January, 1989.[2] Furthermore, there was a notation in the department's records that the counsel who represented the father in the divorce proceedings called the department in October, 1983, to ask whether the children were at risk and whether the father should seek custody. The notation states that the social worker told the attorney an investigation into that question would be a good idea. Finally, the father's attorney brought to the judge's attention that the Department of Public Welfare had been able to locate him to bring him before the Probate Court in 1988 on a question of child support (it was determined that because of his disability and his minimal income he could not pay child support). The department does not dispute these facts.

As lack of notice has been held in some circumstances to constitute " 'a sufficiently fundamental flaw' to make it 'any other reason justifying relief from the operation of the judgment,' within the meaning of rule 60(b)(6)" (*Bushnell* v.

---

[2]The father's attorney said at the hearing that the father denies ever calling the department. Whether or not he called makes no difference here; the essential point is that his address was in the records.

*Bushnell*, 393 Mass. 462, 474-475 [1984], quoting from *Chavoor* v. *Lewis*, 383 Mass. at 806), and as notice is a fundamental requirement of due process where parental rights are involved, *Armstrong* v. *Manzo*, 380 U.S. at 550, the initial question here is whether notice by publication comported with the principles of due process applicable to this case. "An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 314. "[W]ithin the limits of practicality notice must be such as is reasonably calculated to reach interested parties." *Id.* at 318. Here, the department's records included an address for the father as a result of his having called the department; yet the department made no effort to locate the father (except at M.C.I., Cedar Junction, where he had never been). Admittedly, the address was some five and one-half years old; but, the father's attorney represented that the father still lived there in January, 1989, when these petitions were filed. This court held in *Boston* v. *James*, 26 Mass. App. Ct. 625, 628-629 (1988) (a tax foreclosure case), "There was surely a duty to pursue any suggestive source or piece of information disclosed in the papers the city had immediately in hand. The cases, indeed, suggest a duty according to particular circumstances to go further and consult public records or make other ordinary, simple inquiries." We think that the same duty applied here, and, in the circumstances of this case, notice by publication was not sufficient to meet the requirements of due process or of Probate Court Uniform Practice Xa. 3 (1982).[3]

---

[3]Probate Court Uniform Practice Xa.3.B (1982) required that, "[i]f no present address of the parents is known," a copy of the citation must be mailed "to the last known address of each of the parents . . . ."

Because the father did not receive proper notice, the judge had the power, in the exercise of her discretion, to reopen the judgment under rule 60(b)(6). *Chavoor* v. *Lewis*, 383 Mass. at 806-807. *Parrell* v. *Keenan*, 389 Mass. 809, 814-815 (1985). The pivotal question then becomes: Did the hearing on the motion to vacate the judgments provide the father an adequate opportunity to be heard "in a meaningful manner" (*Manzo* v. *Armstrong*, 380 U.S. 551, 552; see also *Department of Pub. Welfare* v. *J.K.B.*, 397 Mass. 1, 3-4 [1979]), and did the judge exceed her authority in deciding the motion against him.

In ruling on a motion under rule 60(b)(6), the "judge may consider whether the moving party has a meritorious claim or defense, . . . whether extraordinary circumstances warrant relief, . . . and 'whether the substantial rights of the parties in the matter in controversy' will be affected by granting the motion" (citations omitted). *Parrell* v. *Keenan*, 389 Mass. at 815. At the hearing on the motion to vacate the judgments counsel for the father and the department presented arguments which went to both the lack of notice and the merits. Although the hearing was not an evidentiary hearing, the father's affidavit was before the judge, in addition to the evidence which had been presented at trial. To prevail in seeking to reopen a judgment, one must show a chance of success on the merits, *Parrell* v. *Keenan, supra*; however, in this type of case, the burden of proof may not be shifted to the father, but rather must remain on the Commonwealth. *Manzo* v. *Armstrong*, 380 U.S. at 551-552.

The following facts were before the judge from departmental records, investigators' reports, the trial, and the information presented on the motion to vacate the judgment. The older child, Hugh (a fictitious name), was born in April, 1980; the younger child in November, 1981. The parents separated in 1983 or earlier. Later, the mother became involved with another man, whom she subsequently married and with whom she had three daughters.

In August, 1983, the father in this case read in a newspaper article that his former wife had been accused of sexual

abuse of two boys; he, mistakenly, thought the children involved were his and called the department to inquire about their whereabouts. As a result of this telephone communication, the department became aware that the former wife had children of her own, which triggered a c. 51A investigation.

In October, 1983, as we previously recounted, the attorney representing the father in divorce proceedings called a social worker at the department to inquire whether the children were at risk with the mother and whether he should request a court investigation. The social worker agreed that an official probe was a good idea. When the judgment of divorce became final in September, 1985, custody of the children was awarded to the mother and visitation rights were granted to the father.[4]

The father stated in his affidavit that he had made repeated attempts to visit the children after separating from his wife but his former wife refused to allow visitation, saying the children were fine but unavailable and that her husband was opposed to the visits. His attorney represented at the motion hearing that the father did not want to upset the children's lives by a court battle over custody and visitation. As of the time of the hearing on the motion he had not seen the children for some ten years until he learned of the judgments dispensing with consent to adoption in May, 1992.

Between 1984 and 1988, the older child, Hugh, suffered severe physical abuse, sexual abuse, emotional abuse, and neglect. In May-June 1988 he was hospitalized in a child psychiatry unit. Suffering from developmental delays, he was undersocialized, aggressive, and at times exhibited violent behavior, rage, and anger. He has been in the same foster home since 1988. Since his placement in foster care he has improved dramatically. His behavior has stabilized and his school work has improved. He is emotionally attached to his foster parents, and they wish to adopt him.

The younger brother also endured severe physical abuse, neglect, and emotional trauma. He was developmentally

[4]There is no indication in the record that the father ever contacted the department, or the department the father, after October, 1983.

delayed, undersocialized, and acted out violently. As of 1988 he could not read. During July-August, 1989, he, too, was hospitalized in a child psychiatry unit. Since he has been in foster care, he has made great headway. He is now able to read and is better able to control his emotions. Since 1991 he has been in the same foster home as his younger half-sisters, and the foster parents wish to adopt him and his sisters.

The father had one criminal conviction, in 1979, on a charge of burning personal property, for which he received a suspended six-month sentence to a house of correction.

Given these compelling circumstances, the probate judge could conclude, considering the merits and the substantial rights and interests of the children, see *Parrell* v. *Keenan*, 389 Mass. at 815, that the judgments should not be reopened on the issue of custody and adoption. Such is particularly the case when "[a]ny significant delay would undermine the state's important interest in protecting the welfare of children." *In re Alexander*, 223 Conn. 557, 565 (1992). The father had an opportunity to present facts on the merits of the case. Contrast *Armstrong* v. *Manzo*, 380 U.S. at 551. The judge could conclude, placing the burden of proof on the department, not the father, that there were sufficient facts to show by clear and convincing evidence that he could not in the circumstances presented here at this time provide adequate parenting to these children, who had not seen him for ten years, who had severe deficits and had made great improvements in foster care, and who had formed emotional bonds with the families wishing to adopt them. Cf. G. L. c. 210, § 3(c), as appearing in St. 1992, c. 303, § 5. We cannot say that the judge abused her discretion in concluding that reopening the issue of custody and adoption could adversely affect the substantial rights of these children (see *Parrell* v. *Keenan*, 389 Mass. at 815). See also *Department of Pub. Welfare* v. *J.K.B.*, 379 Mass. at 5: "Recognition of important parental rights does not change the crucial fact that the focus of the proceeding should be on the best interests of the child. . . . As we have pointed out, 'the task is not simply to find an accommodation between the rights of

the individual parents and the interests of society. . . . The rights and need of the child must be considered as well. . . . Accordingly, in such circumstances, the balance to be struck is more complex.' "

The order denying relief from judgment is affirmed.

*So ordered.*