The mother appeals from a judgment of the Juvenile Court finding her unfit to parent her daughter, Zosha, terminating her parental rights, and approving the Department of Children and Families' (DCF) plan for adoption of Zosha by her maternal grandmother.[3] The mother argues that she was deprived of her right to counsel and of her due process right to notice and an opportunity to be heard. We affirm.
Background. On May 11, 2015, DCF filed a petition under G. L. c. 119, § 24, alleging that the mother's two children were in need of care and protection.[4] That same day, the judge granted DCF temporary custody of Zosha and appointed counsel to represent the mother. Two days later, the mother appeared in court and entered into a written stipulation waiving her right to a temporary-custody hearing.
By July of 2015, DCF was having trouble contacting the mother, who was not complying with her service plan and had missed numerous visits with Zosha. The mother failed to attend any visits after August 26, 2015, even though they were offered to her. By October of 2015, her whereabouts were unknown, leading her counsel to move to withdraw from the case. In her motion, counsel stated that she had no contact with the mother in the prior four months and that her "telephone messages and letters to [the mother] ha[d] gone unanswered." As a result, counsel asserted, she was "unable to obtain [the mother's] current position in the matter and [was] therefore unable to provide zealous representation." After a hearing the next day, which the mother did not attend, the judge allowed the motion, concluding that counsel had "lost [her client] despite tremendous outreach" and that she should not be required to proceed "with an absentee client, and just guessing at what [her] client's position would be and guessing what the evidence would be."
Trial on the merits of the care and protection petition occurred in October of 2015. The mother did not attend. The judge then issued a decision finding Zosha in need of care and protection and granting permanent custody to DCF.
In December of 2015, DCF filed a notice of its intent to seek termination of the mother's parental rights and a motion for assignment of trial dates, both of which were served to the mother's last known address. That same month, the mother briefly made contact, stating in calls to a DCF social worker and the maternal grandmother that she was at "Hope House seeking substance abuse treatment." But subsequent attempts by DCF to contact the mother at Hope House and by telephone messages failed, and, in February of 2016, DCF confirmed with Hope House that the mother was no longer there.
A hearing on DCF's motion for assignment of trial dates was held in January of 2016, but the mother failed to attend. The motion was allowed, and a trial was scheduled for late May of 2016. When that date came to pass, the mother's whereabouts were still unknown to both DCF and the mother's family. The trial went forward as scheduled, and the judge heard evidence regarding DCF's and the maternal grandmother's efforts to contact the mother. In June of 2016, the judge found the mother unfit and ordered the issuance of a decree terminating her parental rights. Thereafter, the judge issued detailed findings of fact and conclusions of law in support of her decision.[5]
Discussion. 1. Right to counsel. Indigent parents have a right to counsel in a proceeding brought to terminate their parental rights. See Department of Pub. Welfare v. J.K.B., 379 Mass. 1, 2 (1979). The right is not absolute, however, and can be lost if the parent abandons the proceeding. See Care & Protection of Marina, 424 Mass. 1003, 1003 (1997).
The mother makes two related arguments on appeal-that the judge erred by allowing her counsel's motion to withdraw and then by failing to appoint new counsel before the termination trial. We disagree on both counts. With respect to the withdrawal of counsel, it is plain that at that point the mother had abandoned the proceeding, justifying allowance of the motion. Despite leaving telephone messages and sending letters, counsel had been unable to speak to the mother for four months and did not know what position she wished to take in the litigation. That the mother was not communicating with DCF and continually missing visits with Zosha further illustrates that she had abandoned the proceeding. See id. at 1003-1004 (judge properly struck attorney's appearance where father failed to appear for hearings and "to communicate with either the department or his attorney").
The mother's argument that the judge should have appointed new counsel fails for similar reasons. In the seven months between when counsel withdrew and when the termination trial occurred, the mother's whereabouts continued to be unknown. Her brief contact in December of 2015 did not reestablish her involvement in the case, where attempts by DCF to reach the mother at Hope House, at her last known address, and by telephone messages all failed. Furthermore, upon learning that the mother might be at Hope House, the judge asked DCF to try and reach her and stated that, if she "starts becoming involved again or contacts the [c]ourt ... to address representation or anything like that, I'll be glad to hear [her] prior to trial." Thus, the judge made clear that she would have entertained appointing new counsel had the mother simply reestablished contact during the months leading up to trial. The mother failed to do so, thereby abandoning the proceeding and losing her right to an attorney. See id. at 1003 (although father participated in initial stages of proceeding, his failure to attend subsequent hearings and trial constituted "absolute abandonment" of proceeding and right to counsel).
2. Due process. The mother next contends that her due process rights were violated because she did not have adequate notice of the trial and therefore did not have a meaningful opportunity to be heard. Again, we disagree. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." O'Brien's Case, 424 Mass. 16, 19 (1996), quoting from Mathews v. Eldridge, 424 U.S. 319, 334 (1976). In termination of parental rights cases, the judge must balance the parent's rights with the Commonwealth's interest in protecting the welfare of the child. See Adoption of Hugh, 35 Mass. App. Ct. 346, 353 (1993).
The mother was plainly aware of these proceedings, as she was personally served with a summons and then appeared at two hearings and entered into a stipulation waiving her right to a temporary-custody hearing. Yet, although she knew that her parental rights were in peril, she failed to appear at later hearings and at both trials. Thus, unlike Adoption of Zev, 73 Mass. App. Ct. 905 (2009), and Adoption of Jacqui, 80 Mass. App. Ct. 713 (2011), on which the mother relies, she had an opportunity to be meaningfully heard but failed to avail herself of it.
We also reject the mother's argument that the judge erred by not doing more, after the mother contacted DCF in December of 2015, to ensure that she received notice of DCF's intent to seek termination and notice of the trial itself. The argument disregards the fact that the mother's whereabouts were unknown during the many months leading up to trial. DCF tried unsuccessfully to contact her throughout that time. Waiting any longer in the hopes that the mother would reappear would have "undermine[d] the [S]tate's important interest in protecting the welfare of children." Hugh, 35 Mass. App. Ct. at 353 (quotation omitted).
Decree affirmed.

The father's parental rights were also terminated, but he did not appeal.

The judge granted custody of the other child, Zosha's half-sister, to her biological father. Neither that child nor her father is a party to this appeal.

The judge's decision was based on, among other things, the mother's substance use disorder, mental illness, failure to appear at trial, failure to comply with her service plan, and missed visits with Zosha. The mother does not challenge the substance of the decision.