RENEE JONES *vs.* BERYL JOY MANNS & another.[1]

No. 90-P-986.

Norfolk. December 16, 1991. - October 30, 1992.

Present: ARMSTRONG, DREBEN, & IRELAND, JJ.

*Practice, Civil*, Appeal, Dismissal of appeal, Interlocutory appeal.

This court held that a civil contempt judgment of a District Court arising
from the alleged violation of a temporary restraining order was appeal-
able to the Appeals Court under the Rules of Appellate Procedure.
[489-490]
A party who claimed a timely appeal from a civil contempt judgment of a
District Court, but lodged the appeal in the wrong court for reasons
grounded in understandable and excusable uncertainties as to the cor-
rect route of appeal, was entitled, in the circumstances, to an order
transferring the appeal to the correct court, the Appeals Court. [490-
494]

COMPLAINT for contempt filed in the Quincy Division of
the District Court Department on November 8, 1985.

On appeal to the Superior Court Department a motion to
dismiss was heard by *Roger J. Donahue*, J.

*Richard A. Johnston* (*Pamela Taylor* with him) for Beryl
Joy Manns.

*Robert P. Kelly* for Roy Manns.

*Richard M. W. Bauer* for the plaintiff.

ARMSTRONG, J. This is an appeal from a judgment of the
Superior Court, dismissing for want of subject-matter juris-
diction an appeal seeking trial de novo under the provisions
of G. L. c. 239, § 5.

The case began as a summary process action in the Quincy
District Court by Beryl Joy Manns against Renee Jones. It
was heard August 29, 1985, and a judgment in Jones's favor
dismissing the action was entered either that day or the fol-

[1] Roy Manns.

lowing day. The judge did not make findings or otherwise indicate the reason for the dismissal.[2] Manns did not file an appeal from the judgment; even if the date of entry is the later date, the time for an appeal was to expire on Monday, September 9, 1985. G. L. c. 239, § 5.

On that day Jones filed an application for a temporary restraining order enjoining Manns from attempting to recover the leased premises, which consisted of certain rooms in Manns's single-family home, except through judicial process and ordering Manns to vacate the house herself until further order of the court. This was allowed by the judge the same day, apparently on an ex parte basis.[3] On September 13 Manns, represented by a new attorney, sought a stay of the September 9 order, also apparently on an ex parte basis. This motion was set down for a hearing at 10:00 A.M. on September 19. At that hearing the judge allowed a motion by Manns's counsel to withdraw his appearance and, upon Manns's adamant refusal to allow Jones to return to the house, ordered Manns taken into custody. Jones and a social worker then went to the house but were dissuaded from entering by Manns's husband, Roy Manns (hereinafter "Roy"), who was living separately from Manns but who had been in the courtroom for the hearing and had hurried ahead to secure the house. That afternoon the District Court clerk received a telephone message from Jones to the effect that she would no longer attempt to take up possession and that Manns should therefore be released. The judge then entered an order that Jones be allowed to enter the house to recover her possessions and directed that the Mannses should be

---

[2]The Mannses' brief in this court indicates that the judge's stated reason was a failure by the South Shore Housing Development Corporation (authority), which paid the greater part of Jones's rent by way of a rental subsidy program, to follow a step in the grievance procedure calling for a conference between the authority and the tenant prior to the authority's agreeing to a termination of the tenancy. See § 6.5.1 of the lease agreement.

[3]A certificate of service by Jones's counsel indicates that he gave telephone notice on September 5 to Manns's then attorney that he would be presenting the motion. Manns indicates by affidavit that she knew nothing about the motion until September 10.

summonsed in on September 26 "to show cause why contempt and damages should not be assessed." When Jones arrived at the house on September 21, the District Court judge found, she discovered that much of her personal property had been destroyed.

At the hearing, in response to a contention by Manns's new counsel that the court had no power to award compensatory damages in a criminal contempt proceeding, it was agreed by the judge and all counsel that Jones would file a complaint for civil contempt seeking monetary damages, which would be answered and, according to the judge's findings, "would be tried out on the basis of the complaint and answer, without the necessity of a separate civil action to be commenced and consolidated with this action." The contempt action was scheduled for trial February 7, 1986. The Mannses, again without counsel and unable to afford counsel, had by that date been put in contact with Manns's present counsel through the Volunteer Lawyers Project of the Boston Bar Association and had been given a letter, to give the judge, indicating they would be able to appear as trial counsel if the judge would continue the trial to March. The motion for a continuance was assented to by Jones's counsel, but the judge denied it, and the trial proceeded with the Mannses acting pro se. Finding for Jones, the judge calculated damages at $2,500 for intentional destruction of Jones's personal property and $15,000 for emotional suffering. Acting on the theory that there had been a violation of G. L. c. 186, § 15F, which prohibits lockouts (i.e., evicting tenant from premises without benefit of court order), the judge trebled the actual damages to $52,500. To this he added attorneys' fees in the amount of $16,000, costs, and interest. The total judgment as amended May 18, 1989, with interest, totalled, apparently, $94,664.48.[4]

---

[4]Two judgments were entered: one against Beryl Joy Manns alone, for $7,500 plus interest (to May 31, 1989) of $3,207.50; and one against the Mannses jointly, for $45,000, with interest (to May 31, 1989) of $19,245, and costs and attorneys' fees, with interest on the fees, of (apparently)

From this judgment, which they conceived as having been entered on a counterclaim in the summary process action, the Mannses filed a timely appeal to the Superior Court within the ten-day period set out in G. L. c. 239, § 5, anticipating a trial de novo in that court. Seven months later Jones filed a motion to dismiss the appeal, contending that the appeal was not from a judgment in a summary process action but rather from a judgment in a separate civil proceeding for contempt, governed by Mass.R.Civ.P. 65.3, as appearing in 386 Mass. 1244 (1982), and subject to review by the Appellate Division of the District Courts. The motion was allowed December 11, 1989, and reconsideration was denied January 1, 1990. On February 25, 1990, the Mannses' counsel filed a motion for the entry of final judgment in order that they might file an appeal to this court. Jones's counsel filed an opposition, arguing on the authority of *Snow* v. *Dyer*, 178 Mass. 393, 397 (1901), that the Superior Court had no jurisdiction to enter a judgment but only an order of dismissal. The judge accepted this argument and denied the motion. Acting on a petition for relief under G. L. c. 231, § 118, the Mannses obtained from a single justice of this court an order directing the Superior Court to enter a judgment. This was done on June 19, 1990. The Mannses filed their notice of appeal July 5.

Jones argues, correctly, that there is a fundamental contradiction in the Mannses' position in this court: that if, as they contend, the judgment from which they appeal was entered on a counterclaim in a summary process action, thus making available relief in the form of a trial de novo in the Superior Court (G. L. c. 239, § 3; G. L. c. 231, § 97), any appeal from the Superior Court's judgment of dismissal had to be filed within ten days after the entry of the judgment (G. L. c. 239, § 5, first par.). Inexplicably, they waited sixteen days. The statute is not unclear: the ten-day period for appeal applies in any action under G. L. c. 239, "including a

$19,711.98. The last figure is semi-legible, as it appears in the appendix, and the time period for the interest on the attorneys' fee was clipped off in the photocopying.

judgment on a counterclaim." The period is fixed by statute and is jurisdictional. *Liberty Mobilehome Sales, Inc.* v. *Bernard,* 6 Mass. App. Ct. 914 (1978). *Shea* v. *Neponset River Marine & Sportfishing, Inc.,* 14 Mass. App. Ct. 121, 129 (1982).

Jones is also correct in arguing, as she did in the Superior Court in support of her motion to dismiss the appeal, that the contempt claim is not properly regarded as a counterclaim in the summary process action. Despite the fact that a civil contempt action is typically docketed with the number of the underlying action (i.e., the action that produced the order whose violation is alleged), it is understood to be an action distinct from the underlying action, culminating in a separate judgment. *Crystal, petitioner,* 330 Mass. 583, 588 (1953). *Colabufalo* v. *Public Bldgs. Commr. of Newton,* 336 Mass. 205, 209 (1957). This understanding is reflected in rule 65.3 ("[e]nforcement of . . . court orders shall be sought by means of a separate civil proceeding denominated as a 'civil contempt proceeding' ").

Although we have not found a decision so holding, we think that a District Court civil contempt judgment, although tried before a judge sitting without a jury, is appealable (as Jones now contends) to the Appeals Court under the Rules of Appellate Procedure, rather than (as contended at an earlier stage by Jones) to the Appellate Division of the District Courts under G. L. c. 231, § 108. The reasons for this parallel precisely those set out in *Walker* v. *Board of Appeals of Harwich,* 388 Mass. 42, 48-50 (1983). In that case it was held that equitable proceedings in the District Courts should be appealed to the Appeals Court rather than the Appellate Division because the report procedure applicable to Appellate Division appeals, modeled on the now defunct bill of exceptions, does not afford the scope of review traditionally available under the equity appeals procedure. Civil contempt proceedings are conceived of as equitable in nature, having their origin, by definition, in alleged violations of in personam orders (injunctive orders, for example), equitable in nature, and the contempt proceeding itself frequently

seeks compliance with such an order, as opposed to mere damages for noncompliance. This particular contempt proceeding began with (and was for violation of) a temporary restraining order, injunctive (thus, equitable) in nature; and it has been settled since *Milkman* v. *Ordway*, 106 Mass. 232 (1870), that an action seeking equitable relief at the outset remains equitable for procedural purposes although it becomes impractical or impossible to afford equitable relief, leaving (as here) only a residual claim for damages. See *Katz* v. *Commonwealth*, 379 Mass. 305, 310 (1979)("a final decree in contempt proceedings [is] appealable like other final decrees in equity where the contempt consist[s] of disobedience to a final decree in equity 'and [is] dealt with civilly and in no respect criminally' " [quoting from *Godard* v. *Babson-Dow Mfg. Co.*, 319 Mass. 345, 348 (1946)]).

The Mannses' appeal should have been taken to the Appeals Court within thirty days of the entry of the District Court's judgment. They claimed an appeal within that period (indeed, within the shorter, ten-day period applicable to summary process actions) but misconceived the proper route of appeal. The appeal was consequently lodged in the wrong court, one that had no jurisdiction to entertain the appeal. In such a situation the appeal is not necessarily to be regarded as a nullity. See *Brockton Hous. Authy.* v. *Williams*, 14 Mass. App. Ct. 955, 956 (1982). We think that, in a proper case, on a showing of excusable neglect and a meritorious appeal (see *Tisei* v. *Building Inspector of Marlborough*, 3 Mass. App. Ct. 377, 379 [1975]; *Cummings* v. *City Council of Gloucester*, 28 Mass. App. Ct. 345, 348 [1990]), the Appeals Court, acting under "the broad powers of the appellate courts" with respect to appeals, *Foreign Auto Import, Inc.* v. *Renault Northeast, Inc.*, 367 Mass. 464, 469 (1975),[5] should be able to order a pending appeal transferred to the Appeals Court in a case where this court has jurisdiction to entertain

---

[5]The "broad powers" referred to in the *Foreign Auto Import* case were those of a single justice of an appellate court, grounded in the statutory powers under G. L. c. 231, §§ 117 and 118, and under Mass.R.A.P. 6(a), 378 Mass. 930 (1978).

it.[6] This, in effect, parallels what was done in *Walker* v. *Board of Appeals of Harwich, supra,* where the Supreme Judicial Court, having determined that the appeal should not have been lodged in the Appellate Division, nevertheless acted on the merits of the appeal. It would be incongruous, under a system of procedural rules designed "to secure the just, speedy and inexpensive determination of every action" (Mass.R.Civ.P. 1, as amended, 385 Mass. 1214 [1982]), for an appellate court to be powerless to rescue a meritorious appeal lodged in the wrong court for reasons grounded in under-standable and excusable uncertainties as to the correct route of appeal.[7]

This, in our view, is such an appeal. From the granting of the temporary restraining order at a time when there was no pending action to which it might be regarded as appertaining — with the exception of the summary process action that had gone to judgment ten days earlier — there seems to have been uncertainty concerning the procedural posture of the case. The complaint was docketed in the summary process action, a fact that, by itself, is of no significance. Nor could the Mannses base their theory that the action for damages was a counterclaim in the summary process action solely on the judge's ruling that the civil contempt complaint would be tried "without the necessity of a separate civil action"; the judge might well have been referring to the provisions of rule 65.3(b), to the effect that no entry fee is normally required in a contempt action because "the [contempt] proceeding shall be considered part of the civil action out of which the contempt arose."[8] In response to the Mannses' challenge to ju-

---

[6]Compare the statutory power of the Chief Administrative Justice to transfer an action pending in a division of the Trial Court that lacks jurisdiction to hear it to one that has that jurisdiction of such actions. See G. L. c. 211B, § 9; *Konstantopoulos* v. *Whately,* 384 Mass. 123, 129, 138 (1981).

[7]For another example of such uncertainty, grounded in the juxtaposition of five plausible routes of appeal with different statutory or rule-based origins, see *Walker* v. *Board of Appeals of Harwich,* 388 Mass. at 46.

[8]This begs the question, however, because, as the Mannses contended in the District Court, the temporary restraining order probably cannot be considered as having "arisen out of" the summary process action.

risdiction, however, Jones argued (in her District Court brief) that "[t]he motion for a restraining order was in the nature of a motion to file a late counterclaim for equitable relief, Uniform Summary Process Rule (USPR) 9, which the Court could allow for cause shown, USPR 5. It is well settled that 'a defendant is entitled to a determination of his counterclaim even though there is a dismissal of the original [complaint]' " (citation omitted). And the court seemed to adopt the counterclaim theory in its findings and rulings, which began, "This is a summary process action commenced by Beryl Joy Manns against Renee Jones"; and later declared:

> "At the outset it should be said that this is at its basis a summary process action in which the tenant would have the right to raise a claim for damages under G. L. c. 186, § 15F by way of counterclaim. In my view this is effectively what has been done in this case and has been the theory upon which it has proceeded."

Thus, the Mannses must be regarded as having had good reason (or at least *much* reason) for thinking that they were involved in trying a counterclaim in the original summary process action; and this impression was reinforced when their counsel consulted with the clerk of the District Court as to the proper route of appeal and were advised (allegedly) that it was by way of trial de novo in the Superior Court under G. L. c. 239, § 5. By itself, of course, reliance on a clerk's incorrect legal advice is not a form of neglect considered excusable. *Hawkins* v. *Hawkins*, 397 Mass. 401, 408 (1986). *Brown* v. *Quinn*, 406 Mass. 641, 644-645 (1990). *Krupp* v. *Gulf Oil Corp.*, 29 Mass. App. Ct. 116, 119 (1990). Here, however, it was simply confirmatory of what had seemed to be the position of Jones and the judge from the inception of the contempt complaint.

We therefore conclude that the error of the Mannses' counsel in appealing to the wrong court was excusable misunderstanding or neglect and that, because the appeal involves meritorious issues, in the usual sense of that phrase in

appellate practice,[9] the appeal should, if possible, be not simply dismissed, after the time for authorizing a late appeal has expired, but rather transferred to this court as one having jurisdiction to hear the appeal. In *Krupp* v. *Gulf Oil Corp.*, 29 Mass. App. Ct. at 121, we recognized "an evolving rule that a procedural tangle having its origin in a failure by the court to observe the mandates of rules will generally be resolved in favor of preserving rights of appeal where this result is technically possible and does not work unfair prejudice to other parties" (footnote omitted). The situation here is analogous, where the procedural confusion was created and shared by the court and the parties. The result (i.e., preserving the appeal by way of transfer) is, we think, technically possible because the most critical step, the claim of appeal from the District Court judgment (see *Schulte* v. *Director of the Div. of Employment Sec.*, 369 Mass. 74, 79-80 [1975]; Mass.R.A.P. 3[a], 378 Mass. 927 [1979][10] ) was timely; and the appeal from the order of the Superior Court dismissing the first appeal was claimed within the one-year period during which a single justice of this court has authority to allow a late appeal. See Mass.R.A.P. 14(b), 378 Mass. 939 (1979).[11] Thus, the question is properly presented in this

---

[9]A meritorious appeal is "one that is worthy of presentation to a court, not one which is sure of success." *General Motors Corp., petitioner*, 344 Mass. 481, 482 (1962). *Commonwealth* v. *Levin*, 7 Mass. App. Ct. 501, 504 (1979). The appeal from the District Court's judgment presents several meritorious issues, including whether damages assessed under G. L. c. 186, § 15F, properly include damages for emotional distress or whether a claim for emotional distress due to a lockout should be assessed under G. L. c. 186, § 14; whether the trebling provisions of § 15F were improperly applied to the property damage resulting from the intentional destruction of Jones's household effects and other possessions; whether Roy Manns could properly be found in contempt of the temporary restraining order when he was not then a party to any proceeding; and whether the District Court had jurisdiction to enter the restraining order.

[10]Rule 3(a) reads in part: "Failure of an appellant to take any step other than the timely filing of a notice of appeal shall not affect the validity of the appeal, but shall be ground only for such action as the appellate court deems appropriate. . . ."

[11]We can treat the single justice's order as one under rule 14(b), because its plain intent was to enable the Mannses to bring to this court their appeal from the order of dismissal. If, as the Mannses argue, the dismissal

court whether a timely appeal, pending in a court having no jurisdiction, should be dismissed or should be transferred here. For the reasons already stated, we have concluded that an order of transfer is more consonant with justice in the unusual circumstances of this case.

The judgment dismissing the appeal is reversed, and an entry is to be made in the docket of the Superior Court to the effect that the Mannses' appeal from the judgment of the District Court is transferred to the Appeals Court at its direction.[12] Upon entry, the case will stand for briefing and argument on the merits.

*So ordered.*

---

should have been reduced to judgment form (here they rely, probably correctly, on *Chittenden Trust Co.* v. *Levitt*, 26 Mass. App. Ct. 208, 210-211 [1988]), then, of course, their appeal was timely and needed no extension.

[12]A separate order has been entered, of even date, containing explicit directions relative to the transfer and entry of the appeal in this court, and including an order of remand to the District Court judge for the clarification of a critical finding.