Roach, Christine M., J.
Plaintiff Michael P. Murray seeks an Order of Contempt, Judgment, and sanctions against Defendant America’s Servicing Company (ASC) on the grounds that ASC failed to comply with an order of the court (Lemire, J.) entered in an underlying action on September 19, 2007 (“Complaint”).[1] At a preliminary hearing before this court on the Complaint, the parties stipulated they did not require an evidentiary hearing, and instead requested the court take the Complaint under advisement based on paper record submissions. The parties supplemented their submissions through and including June 3, 2008. Following review of the entire submitted record, the court enters judgment in favor of Defendant, and dismisses the Complaint with prejudice, for the reasons contained herein.
Record Facts
ASC is the mortgagor of Murray’s home, located at 354 Sugar Road in Bolton. On August 29, 2007, Murray filed a complaint against ASC, Worcester Civil Action 07-1716-B, due to a dispute regarding the manner in which ASC applied Murray’s escrow account payments (“the underlying action”). The underlying action is currently pending. Most of its detail is not relevant to resolution of this Complaint, despite both parties’ submissions and arguments about the respective merits of their original positions. The undisputed facts relevant to contempt are as follows.
On September 19, 2007, Judge Lemire enjoined ASC in the underlying action from “causing or allowing any reporting of late or past due payments on the subject account to any of the major or minor credit reporting agencies or others,” and ordered ASC “to immediately repair Plaintiffs credit rating vis á vis any derogatory credit reporting concerning the mortgage loan which is the subject of this complaint” (“the Order”). ASC acknowledged receipt of the Order. On November 26, 2007, ASC notified Murray that it had updated a Universal Data Form (UDF),[2] which updated UDF now indicated Murray’s Loan with ASC was current, and supplied Murray with a copy of the updated form. ASC also informed Murray in that same correspondence that it had placed a stop on credit reporting on his mortgage in compliance with the order.
On February 26,2008, Murray filed this Complaint, alleging ASC knowingly and wilfully refused to comply with the Order. To support his contention, Murray submitted an email to Murray from a third party, dated February 22, 2008, stating that his credit report continued to show Murray made late payments to ASC in January, April, May, June, and July of 2007. Murray later submitted to the court a copy of his credit report printed from Experian’s website dated 2/26/2008, and documents purporting to demonstrate that Murray’s credit score dropped from 698 on some undisclosed date (Murray’s Statement of Facts at Fact 21 states this was January 21, 2007, but the document submitted as Exhibit H is undated), to 633 on August 22, 2007.[3]
ASC’s position is that updating the UDF was sufficient to comply with the terms of the Order. In support of this position, ASC argues that, once corrected information is submitted to the three major credit bureaus, ASC cannot control the credit bureaus’ actions. Finally, ASC submitted a copy of Murray’s Expelían Bullseye report, dated May 12, 2008, which would appear to indicate his mortgage loan to be current.[4]
Standard of Review
Although a civil contempt action shares a docket number with the underlying action, the complaint for civil contempt is separate from the underlying action and will result in a separate judgment. Jones v. Manns, 33 Mass.App.Ct. 485, 489 (1992), and cases cited. Civil contempt occurs where there is “a clear and undoubted disobedience of a clear and unequivocal command.” Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 565-66 (1997). A command is “clear and unequivocal" where it provides the parties with “fair notice of the conduct the order prohibits.” Sax v. Sax, 53 Mass.App.Ct. 765, 772 (2002). The burden of *455 proof in a civil contempt action is on the complainant to prove his case by a preponderance of the evidence. Where there is doubt as to whether the disobedience occurred, “there cannot be a finding of contempt.” Judge Rotenberg Educ. Ctr., Inc. v. Commissioner of the Dep’t of Mental Retardation, 424 Mass. 430, 443 (1997).
Findings and Rulings
The court finds Plaintiff has failed to meet his burden on this record.
The Order itself is clear and unequivocal, and ASC does not dispute it had fair notice. There is no question the court ordered ASC to do two separate things: 1) cease reporting or allowing reporting of past due payments on the mortgage account; and 2) “immediately repair the Plaintiff s credit rating vis a vis any derogatory credit reporting concerning the mortgage loan.” Judge Lemire did not specify how ASC was to implement the order, and I will not read new terms into the order. Judge Rotenberg, 424 Mass. at 450.
As to the first prong, however, Murray is not able to establish ASC committed “a clear and undoubted disobedience” of its obligations. There is no reliable, admissible evidence that ASC “reported or allowed reporting of past due payments on the mortgage account” between the date of the Order and confirmation of the submission of the new UDF, a period of some nine weeks. The email which came from a person named Cheri Jones, dated February 22, 2008 (attached again to Plaintiffs submission as Exhibit C and originally attached to the Complaint as Exhibit C), is classic totem pole hearsay. This “mortgage loan processor” is communicating to Murray that something (the court infers some new sort of mortgage or loan application) is being denied, ostensibly because of late payment history “reporting” by ASC. However, it is impossible to know from this document exacting how, when, where, or from whom the potential witness is deriving her information. Even if the court infers from this document that somewhere in cyberspace Murray’s (dated and enjoined) payment history was still being reported by the three services as of February 2008, this document provides no evidence whatsoever that ASC itself was “clearly and undoubtedly” violating the Order. It is undisputed that by November 26,2007, at the latest, ASC had “placed a stop on credit reporting for this loan.”
With respect to the second prong of the Order, ASC maintains the way for it to “repair [Murray’s] credit” was to submit a UDF to the major credit bureaus. Murray has not provided any evidence or authority to the contrary. ASC also argues that, once it sends the UDF, it has no control over the actions of the credit bureaus in response to the UDF. Again, Murray has not provided evidence or authority to the contrary, and it is his burden to do so. The court finds ASC has demonstrated it took reasonable steps within its purview to comply with the Order.
Murray argues ASC is in contempt of court because it made the least effort possible to comply. Murray cites no authority to support this proposition of law. It is true that “a contempt finding is appropriate where ‘steps are taken to subvert the decree.’ ” Judge Rotenberg, 424 Mass. at 449. Contempt may also be appropriate where a party does not exercise good faith in implementing its obligations under the court order. Id. However, it is not enough simply to claim ASC failed adequately to comply, without some clear evidentiary showing of what action ASC could or should have taken, but did not. Murray’s Statement of Facts Relevant to Contempt, at Fact 4, “(t]he Defendant has provided no evidence that submission of a ‘Universal Data Form’ is the only way to cure their negligent and contemptuous conduct and come into compliance with the Court Order,” is wrong as a matter of both fact and law. Murray has the burden reversed. It is he who must offer proof by a preponderance of a violation of the Order.
On the evidence presented, it cannot be said that ASC committed a clear and undoubted disobedience or acted in bad faith. Because Murray has failed to meet his burden of proof, judgment must issue in favor of ASC.
CONCLUSION
For all of the reasons stated herein, Judgment shall enter in favor of the Defendant on this Complaint for Contempt, Plaintiffs requests for relief are denied, and this action is dismissed with prejudice.
Distracted by this Complaint, it would appear the parties may not have focused on the tracking order for the underlying action, in which discovery and dispos-itive motions deadlines have already passed. The clerk shall set the underlying case, Worcester 07-1716-B, for pre-trial and trial dates.

Plaintiff, an attorney licensed to practice in Massachusetts, is representing himself pro se in both proceedings.

A UDF notifies credit bureaus of the current status of a loan. ASC attached a copy of the UDF to its Answer to Murray’s Complaint here. The UDF is dated November 26, 2007, and shows Murray’s loan to be current. However, the copy is unsigned.

These materials are clearly hearsay, although they could potentially be admissible under the business records exception, were they properly authenticated. Murray has not provided independent authentication, and the court weighs this material accordingly. Moreover, these documents appear to be irrelevant to this Complaint. Murray shows that his credit score was 633 as of August 22, 2007 (before the injunction issued), but neither party has submitted any evidence showing what Murray’s credit score was on February 26, 2008.

The affidavit of Ms. Boris accompanying this report states she is a Wells Fargo employee familiar with the underlying loan transaction. She further states this is a fair and accurate copy of the report, but as she is not an Experian employee, her capacity to so testify is unclear. Boris Affidavit at paras. 1 & 10.