NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11892


L.B. & another[1] vs.  CHIEF JUSTICE OF THE PROBATE AND FAMILY COURT DEPARTMENT & others.[2]



Suffolk.    October 5, 2015. - May 4, 2016.

Present:  Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Probate Court, Guardian.  Due Process of Law, Assistance of counsel.  Constitutional Law, Assistance of counsel.  Practice, Civil, Assistance of counsel.



Civil action commenced in the Supreme Judicial Court for the county of Suffolk on May 6, 2015.

The case was reported by Botsford, J.


Laura Williams Gal (Christina L. Paradiso with her) for L.B. & another.
Norah E. Kane for the minor children of L.B.
Jo Ann Shotwell Kaplan, Assistant Attorney General, for Chief Justice of the Probate and Family Court Department.
Deborah W. Kirchwey for the minor child of C.L.
Jamie Ann Sabino, Susan R. Elsen, Mary K. Ryan, & Melanie V. Woodward, for Massachusetts Law Reform Institute, Inc., & others, amici curiae, submitted a brief.

---

[1] C.L.

[2] Justices of the Worcester County and Hampden County Divisions of the Probate and Family Court Department, the three minor children of L.B., and the minor child of C.L.

Andrew L. Cohen, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

Susan M. Finegan, Sandra J. Badin, & Geoffrey A. Friedman, for S.D., amicus curiae, submitted a brief.

Richard M. Page, Jr., for Boston Bar Association, amicus curiae, joined in a brief.

SPINA, J. In Guardianship of V.V., 470 Mass. 590 (2015), we held that a parent whose minor child is the subject of a guardianship petition pursuant to G. L. c. 190B, § 5-206, and who cannot afford counsel has a right to have counsel appointed and to be so informed. The issue in this case is whether a parent also has a right to counsel if and when the parent petitions to have the guardian removed or to have the terms of the guardianship modified. We conclude that a parent does have a right to counsel for certain of those types of petitions. We also offer some guidance to the Probate and Family Court, where these private guardianships occur, for the development of rules and policies to implement this right to counsel.

Procedural history. The plaintiffs, L.B. and C.L., are the mothers of minor children for whom guardians were appointed, in 2012 and 2013 respectively, pursuant to G. L. c. 190B, § 5-206. They commenced this action in the county court in 2015, challenging a written policy of the Chief Justice of the Probate and Family Court Department (Chief Justice) concerning the appointment of counsel in cases involving guardianships of

minors under G. L. c. 190B.  Specifically, they challenged a portion of a memorandum that the Chief Justice issued to the judges of the Probate and Family Court and to court personnel on February 20, 2015, shortly after we released our opinion in Guardianship of V.V., supra.  The memorandum addressed our decision and identified a number of steps that the Probate and Family Court was taking to implement our holding.  The portion of the memorandum challenged by the plaintiffs is a single sentence that, in speaking of Guardianship of V.V., states: "Based on the holding in this case, the right to counsel for indigent parents only applies in a Petition to Appoint a Guardian of a Minor."  By this sentence, the Chief Justice essentially informed the probate judges and court personnel that, in her view, the right to counsel recognized in Guardianship of V.V. applies only to proceedings on the initial petition for appointment of a guardian for a minor, and, conversely, does not apply in subsequent proceedings such as petitions to remove a guardian after he or she has been appointed or to modify the terms of the guardianship.  The plaintiffs, as described below, were engaged in the latter types of proceedings in the Probate and Family Court at the time they commenced this action, and their requests for counsel were denied.

The plaintiffs alleged in their complaint that the Chief Justice's policy, by limiting the right to counsel to proceedings for the initial appointment of guardians, contravened our decision in Guardianship of V.V. and violated their right to due process. A single justice of this court reserved and reported the plaintiffs' complaint to the full court.[3]

Facts.[4] As stated, the plaintiffs are the mothers of minor children for whom guardians were appointed pursuant to G. L.

---

[3] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services and the amicus brief submitted jointly by the Massachusetts Law Reform Institute, Women's Bar Association of Massachusetts, Greater Boston Legal Services, Justice Center of Southeast Massachusetts LLC, Community Legal Aid Services and Counseling Center, Harvard Legal Aid Bureau, Northeast Legal Aid, Mental Health Legal Advisors Committee, and Center for Public Representation. The Boston Bar Association also submitted a letter stating that it endorsed the latter brief.

In addition, the single justice indicated in her reservation and report that the children and guardians in the underlying cases could be heard on the question whether they have standing to address the issue of appointment of counsel for the parents. The guardians have not submitted briefs. Both plaintiffs' children have submitted briefs arguing that they do have standing on that issue (although they take different positions on the substantive merits of the issue). No party or amicus argues otherwise, so we shall assume without deciding that the children do have standing, and, accordingly, we consider their arguments on the issue as well.

[4] These facts are drawn principally from the materials in the record before the single justice.

c. 190B, § 5-206.[5]  Each guardianship proceeding began, and each

appointment occurred, well before our decision in Guardianship

of V.V., so it was not established at the time of those

proceedings that parents whose minor children were the subject

of guardianship petitions had a right to counsel.  It appears

that neither L.B. nor C.L. was represented by counsel at the

time the guardians were appointed.  The guardianship decree for

each child specified that the guardianship was to extend to the

child's eighteenth birthday, unless terminated sooner by order

of the court.[6,7]

----

[5] The statute provides in relevant part:  "A minor
[fourteen] or more years of age or any person interested in the
welfare of the minor may petition for appointment of a
guardian."  G. L. c. 190B, § 5-206 (a).

[6] Specifically, in April, 2012, L.B.'s parents petitioned to
have themselves appointed as guardians for her three minor
children.  Their petitions were granted in October, 2012.  There
was one guardianship petition, and one decree issued, for each
child.  Each decree indicated that L.B. had been given proper
notice of the petition and did not object to the appointment of
guardians.  Each decree also stated that the guardians were
prohibited from permanently removing the child from
Massachusetts without a court order, and that the guardians were
required to notify the court of any change of address for the
guardians or the child.  Those were the only restrictions on the
rights of the guardians expressly contained in the decrees.
None of the decrees contained any provision for visitation by
L.B. with her children or for any other type of contact or
communication between her and them.

[7] In September, 2012, C.L.'s mother and stepfather
petitioned to have themselves appointed as guardians for C.L.'s
minor child.  Their petition was granted in February, 2013.  The
decree stated that, after a hearing, C.L. was found to be unfit
to parent her child.  The decree also contained provisions

In December, 2014, L.B. filed three petitions in the trial court pursuant to G. L. c. 190B, § 5-212,[8] one with respect to each of her children, seeking to remove the guardians.  She alleged that she was able to "resume parental responsibilities." She stated that she "no longer consents to the guardianship[s] because [she] has appropriate housing and supportive services," that "she has played an active role in [her children's lives] during the guardianship[s]," and that "she is fit to resume primary responsibility for, and care of, her [children]."

In February, 2015, C.L. filed a petition in the trial court seeking to modify the terms of her visitation with her child.[9] She alleged, among other things, that she was living in a stable environment, had income, and was attending college, and that she had "done what has been asked of [her]," presumably by the terms

_____

similar to the decrees for L.B.'s children concerning removal or relocation of the child.  The decree further specified certain days and times that C.L. would be permitted to visit with the child; that additional visits could occur by agreement of the parties; that the visitation would be unsupervised; and that there was to be no contact during the visits between the child and C.L.'s boy friend.

[8] The statute provides in relevant part:  "Any person interested in the welfare of a ward or the ward, if [fourteen] or more years of age, may petition for removal of a guardian on the ground that removal would be in the best interest of the ward or for any other order that is in the best interest of the ward."  G. L. c. 190B, § 5-212 (a).

[9] The pleading was entitled "general probate petition."  It was, in essence, a petition to modify the guardianship pursuant to G. L. c. 190B, § 5-212 (a).  See note 8, supra.

of the guardianship and by the guardians.  She requested more visitation, and on different terms, than had been prescribed in the guardianship decree, specifically, overnight visitation on weekends and during vacations.

In March, 2015, L.B. filed an application for the appointment of counsel to represent her in each of the three cases involving her, and C.L. similarly moved for appointment of counsel in the case involving her.  By that time, we had decided Guardianship of V.V. and the Chief Justice had issued her memorandum indicating her position that the holding in that case did not extend to situations like L.B.'s and C.L.'s.  Their requests for counsel were therefore denied.  Consistent with the Chief Justice's stated policy, the judge in L.B.'s cases denied her requests on the ground that a "petition for removal of [a] guardian does not qualify [for] appointment of parent's counsel," and the judge in C.L.'s case denied her motion because her pending petition to modify the guardianship was "not an initial petition" for appointment of a guardian.  Shortly thereafter, they commenced this action in the county court.[10]

---

[10] After the case was reported by the single justice to the full court, L.B. resolved the matters involving her three children in the Probate and Family Court.  Consequently, her present claims are moot.  Nevertheless, we address her principal claim -- concerning a parent's due process right to counsel on a petition to remove a guardian -- because it is fully briefed, is likely to arise in many other cases, is of considerable public importance, and is something that can easily evade appellate

Discussion. 1. The holding in Guardianship of V.V. The plaintiffs maintain that our decision in Guardianship of V.V. already resolves the questions that are now before us. That is incorrect. That case involved a petition for the initial appointment of a guardian under G. L. c. 190B, § 5-206. The sole question was whether the mother was entitled to counsel on that particular type of petition. Guardianship of V.V., 470 Mass. at 590-591. Significantly, while the appeal was pending, the case proceeded to trial in the Probate and Family Court on the mother's petition to remove the guardian, and on that petition the mother was represented by counsel. Id. at 591 n.2. The appeal therefore did not concern, and the court did not address, any question of a parent's right to counsel on a petition to remove the guardian or to modify the terms of the guardianship.

To support their argument, the plaintiffs rely on two excerpts from Guardianship of V.V. First, they cite a footnote near the beginning of the opinion that concerned mootness.[11] The

---

review otherwise. See Guardianship of V.V., 470 Mass. 590, 591-592 (2015); Care & Protection of Erin, 443 Mass. 567, 568 (2005), and cases cited.

[11] "That the mother was represented by counsel at the trial on her petition to remove the guardian would not render the appointment of counsel issue moot. The fact remains that the mother was not represented by counsel at the outset of the guardianship proceedings, and our concern regarding whether a

plaintiffs read too much into the footnote.  It was meant only to explain that the presence of counsel on the petition to remove the guardian did not obviate the need to answer the question whether the mother was entitled to counsel on the petition for appointment of the guardian in the first place. Having counsel at one phase of a guardianship proceeding clearly does not suffice for due process purposes if the parent is also entitled to have counsel at another phase.  The additional statement in the footnote, that "our concern regarding whether a parent is entitled to counsel applies to all proceedings related to guardianship," was not a holding that the right to counsel does in fact apply to all such proceedings.  It was a recognition that the important question whether a parent has a right to counsel applies equally to all phases of the proceedings.

The plaintiffs also rely on a sentence in which we said: "Because of the impact of a guardianship on the parent-child relationship, and the particular nature of the fundamental rights at stake, an indigent parent whose child is the subject of a guardianship proceeding is entitled to, and must be furnished with, counsel in the same manner as an indigent parent whose parental rights are at stake in a termination proceeding

---

parent is entitled to counsel applies to all proceedings related to guardianship."  Guardianship of V.V., 470 Mass. at 591 n.2.

or, similarly, in a care and protection proceeding." Guardianship of V.V., 470 Mass. at 592-593. Read in context, that sentence refers only to the phase of the guardianship proceeding that was actually at issue in that case, namely, the initial petition to appoint a guardian. It was not intended as a holding with respect to other phases of a guardianship proceeding that were not at issue.

2. Due process claim. We next turn to the plaintiffs' main claim, that due process requires the appointment of counsel for indigent parents who petition to remove guardians for their children or to modify the terms of the guardianships. The Chief Justice now acknowledges that counsel may be required constitutionally on a petition to remove a guardian; she argues, however, that the parent must first make a credible threshold showing of "substantial and relevant changed circumstances" since the guardian was appointed. She also argues that there is no right to counsel when a parent petitions only to modify the terms of the guardianship.

a. Removal petitions. It is well settled that "parents have a fundamental liberty interest in the care, custody, and management of their children," Matter of Hilary, 450 Mass. 491, 496 (2008), and that "[d]ue process requirements must be met where a parent is deprived of the right to raise his or her child." Care & Protection of Erin, 443 Mass. 567, 571 (2005).

See Department of Pub. Welfare v. J.K.B., 379 Mass. 1, 3 (1979).

"In determining what process is due . . . this court 'must

balance the interests of the individual affected, the risk of

erroneous deprivation of those interests and the government's

interest in the efficient and economic administration of its

affairs.'" Commonwealth v. Barboza, 387 Mass. 105, 112, cert.

denied, 459 U.S. 1020 (1982), quoting Thompson v. Commonwealth,

386 Mass. 811, 817 (1982).  See Care & Protection of Robert, 408

Mass. 52, 58-59 (1990).  When balancing the interests, we bear

in mind that "[t]he requirements of procedural due process are

pragmatic and flexible, not rigid or hypertechnical."  Roe v.

Attorney Gen., 434 Mass. 418, 427 (2001).  Due process "calls

for such procedural protections as the particular situation

demands."  Id., quoting Morrissey v. Brewer, 408 U.S. 471, 481

(1972).

     i.  Individual interests.  The interest of parents in their

relationship with their children is substantial.  "Our

decisions, and those of the United States Supreme Court, leave

no doubt that '[t]he rights to conceive and raise one's

children' are 'essential . . . basic civil rights of man . . .

far more precious . . . than property rights.'"  Department of

Pub. Welfare v. J.K.B., 379 Mass. at 3, quoting Stanley v.

Illinois, 405 U.S. 645, 651 (1972).  Fundamental rights and

interests of parents are implicated not only at the stage when a

guardian is first appointed for a minor child, as in Guardianship of V.V., but also when a parent subsequently petitions to regain custody by removing the guardian.[12] This is so because the appointment of a guardian only displaces the parent's rights and responsibilities for the duration of the guardianship (except as provided in the decree or otherwise by law); it does not terminate them. Guardianship of V.V., 470 Mass. at 592. The parent is free to attempt to reactivate those rights by removing the guardian and putting an end to the guardianship. It would be incongruous to recognize the significance of the parent's rights for due process purposes at the time those rights are first displaced, as we did in Guardianship of V.V., but not to do so at the time the parent seeks to regain them. The deprivation at the former stage and the continued deprivation at the latter stage are equally real and significant. Cf. Care & Protection of Erin, 443 Mass. at 571 (describing review and redetermination proceeding in care

---

[12] In the Probate and Family Court, L.B.'s cases involved petitions to remove guardians in order to put an end to the guardianships and restore the parent's right to custody. The custody of the children was thus directly at stake. The same rights and interests might not be implicated when a parent seeks to remove a guardian in circumstances that would not lead to the child returning to the parent, e.g., where the petition seeks merely to remove one guardian and replace him or her with another. See G. L. c. 190B, § 5-212 (a) (authorizing petitions for removal of guardian and petitions by guardian for permission to resign; "A petition for removal or for permission to resign may, but need not, include a request for appointment of a successor guardian").

and protection case as "a readjudication" of initial custody order; "[a]s such, it implicates the same liberty interests that exist at an initial determination that a child is in need of care and protection.  In a review and redetermination proceeding, the judge is deciding simply whether to maintain the separation of parent from child").

ii.  Risk of erroneous deprivation.  The risk of erroneously adjudicating these fundamental rights and interests of parents is no less real at the guardian removal stage than at the appointment stage.  Judges at both stages may be called on to make complex determinations that consider numerous factors regarding the child's best interest and the parent's fitness.[13]

_____

[13] The provision for removal of a guardian, G. L. c. 190B, § 5-212 (a), speaks of removal when it is in "the best interest of the [child]."  Unlike the provision that states the bases for appointment of guardians initially, see G. L. c. 190B, § 5-204 (a), it does not expressly mention parental fitness.  Our cases have made clear, however, that consideration of parental fitness, when parental fitness is at issue, will be highly relevant to a determination of a child's best interest.  See, e.g., R.D. v. A.H., 454 Mass. 706, 715 (2009) ("In the context of a custody determination, . . . it is essential to recognize that the determination whether a parent is 'unfit' is closely intertwined with a consideration of the best interests of the child"); Bezio v. Patenaude, 381 Mass. 563, 576 (1980) ("Neither the 'parental fitness' test nor the 'best interests of the child' test is properly applied to the exclusion of the other"), citing Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption, 367 Mass. 631, 641 (1975) (stating that "the tests . . . reflect different degrees of emphasis on that same factors" and "are not separate and distinct but cognate and connected").  Judges hearing removal petitions will thus inevitably hear evidence, and be asked to make determinations, concerning parental fitness.

Questions, often difficult ones, about the child's physical and psychological well-being must be answered; questions about a parent's mental and physical health, addictions, history of abuse or neglect, and the impact of these things on the parent's ability to meet the needs of the child are also often in play. Additionally, as the plaintiffs and amici point out, judges hearing removal petitions may be called on to consider evidence, and make difficult determinations, on the child's bonding with the guardian during the guardianship, and the potential effect on the child of being removed from the guardian's care and returned to the parent's custody. See, e.g., Guardianship of Cheyenne, 77 Mass. App. Ct. 826, 830-831 (2010); Guardianship of Estelle, 70 Mass. App. Ct. 575, 581-582 (2007), and cases cited.

With the complexity of the legal and factual issues comes an increased risk that a judge might incorrectly decide those issues, especially in the absence of counsel to present and defend the positions of the parent, and hence an increased risk that an unrepresented parent will suffer an erroneous deprivation of his or her rights. Cf. Department of Pub. Welfare v. J.K.B., 379 Mass. at 4 (noting complexity of issues in adjudicating petitions to dispense with consent to adoption as consideration in finding right to counsel). The presence of counsel for a parent will both help to protect the parent's rights and interests in this regard and assist a judge to ensure

accuracy and fairness in his or her adjudications. Id. (noting benefits of counsel both for parents and for judges).

iii. Government interests. Finally, we must consider the Commonwealth's interest in the efficient and economic operation of its affairs. Although the Commonwealth is not a party per se in a private guardianship proceeding under G. L. c. 190B,[14] it nevertheless has interests that are affected and must be weighed. It has an interest in ensuring that the children of the Commonwealth are protected adequately and, toward that end, that accurate and fair adjudications are made by judges in these cases. Care & Protection of Robert, 408 Mass. at 65-66, and cases cited. Significantly, it also has an interest in seeing that State resources are not used irresponsibly. There is no need, for example, to require the State to incur the cost and administrative burden of providing counsel for removal petitions that have no hope of prevailing. The risk of erroneously depriving a parent of his or her interests on such a petition would be negligible, the presence of counsel would add little of value, and an expenditure of State resources for an attorney to

---

[14] Many of the private guardianship cases in the Probate and Family Court do, however, concern children who have been involved with the Department of Children and Families. See V. Weisz & B. Kaban, Children's Law Center of Massachusetts, Protecting Children: A Study of the Nature and Management of Guardianship of Minor Cases in Massachusetts Probate and Family Court, at 22 (2008). See also Annie E. Casey Foundation, The Kinship Diversion Debate: Policy and Practice Implications for Children, Families and Child Welfare Agencies (2013).

pursue such a petition would therefore be unnecessary.  See Roe v. Attorney Gen., 434 Mass. at 427, quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976) (referring to "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" [emphasis added]).

   iv.  Balancing of interests.  The most pragmatic way to balance all three due process considerations -- the parental interests, the risk of erroneous adjudication of those interests, and the government interests -- is to require that counsel be made available for those petitions that present a colorable claim for removal, but not for petitions that are obviously meritless.  Requiring a parent to make a modest yet meaningful preliminary showing that he or she has a colorable case for removal of the guardian, before counsel is appointed to prosecute such a petition, will help to guard against an unnecessary and irresponsible expenditure of State resources and, we hope, will discourage, and thereby help to keep the courts free of, patently meritless attempts at removal.

   The Chief Justice contends that the parent should be required to make an initial showing that there have been "substantial and relevant changed circumstances" since the guardian was appointed.  She analogizes to review and redetermination proceedings in care and protection cases, see

G. L. c. 119, § 26,[15] and relies heavily on the analysis in Care & Protection of Erin, 443 Mass. at 570-572. This court held in that case that the ultimate burden of proof on review and redetermination is on the Department of Children and Families (then the Department of Social Services) (department) to prove that a parent remains unfit to further the best interests of the child and that the child, therefore, is still in need of care and protection. Id. at 572. The court also held that the parent petitioning for review and redetermination bears a preliminary burden to produce some credible evidence of changed circumstances since the initial determination, and it is then and only then that the department is put to its burden of proof. Id. It is the latter kind of burden that the Chief Justice argues is applicable by analogy here.

The Chief Justice's analogy is not perfect, but, as stated, we agree in general that there should be some threshold assessment of the claim for removal before the right to counsel materializes. We are concerned, however, that her formulation of what is required -- a demonstration of "substantial and

_____

[15] The statute provides in relevant part: "On any petition filed in any court under this section, the [Department of Children and Families] or the parents, person having legal custody, probation officer or guardian of a child or the counsel or guardian ad litem for a child may petition the court not more than once every [six] months for a review and redetermination of the current needs of such child whose case has come before the court. . . ." G. L. c. 119, § 26 (c).

relevant changed circumstances"[16] -- will set the bar too high for an unrepresented litigant before the right to counsel is triggered. "Substantial," "relevant," "material," and "significant" all suggest that a parent's burden would be to show that circumstances have changed in a legally significant manner and to a legally cognizable degree. It would be unusual and potentially unfair to require a litigant unaided by counsel to make that kind of a legal demonstration before the right to counsel arises. A more appropriate threshold showing would be for the parent simply to satisfy the judge that he or she has a colorable or "meritorious" claim in the sense that it is worthy of being presented to and considered by the court. See General Motors Corp., petitioner, 344 Mass. 481, 482 (1962) ("A meritorious case is one that is worthy of presentation to a court, not one which is sure of success"). This is a lighter, less technical burden than the one proposed by the Chief Justice, and something that will be more manageable for an unrepresented litigant with fundamental liberty interests at stake. "Meritorious" is a familiar concept that has been

---

[16] The brief of the Chief Justice of the Probate and Family Court Department (Chief Justice) also describes the proposed burden as a showing that "circumstances have materially and significantly changed since due process procedures were afforded or available last (i.e., at the time of the original appointment or the most recent review of the appointment pursuant to a petition to remove the guardian)."

applied in a variety of circumstances.[17]  It is not an onerous standard.

In sum, we hold that when an indigent, unrepresented parent seeks, pursuant to G. L. c. 190B, § 5-212, to remove a guardian for a minor child and thereby regain custody of the child, the parent has a due process right to counsel to prosecute the petition, and to be so informed, provided the parent presents a meritorious claim for removal.

b.  Modification petitions.  Petitions to modify the terms of a guardianship, like petitions to remove a guardian and regain custody of a child, can also affect the fundamental rights and interests of a parent.  A petition such as C.L.'s,

---

[17] See, e.g., Commonwealth v. Gunter, 459 Mass. 480, 487, cert. denied, 132 S. Ct. 218 (2011) (gatekeeper proceeding pursuant to G. L. c. 278, § 33E; when determining whether new issue is "substantial," "[t]he bar . . . is not high.  It must only be a meritorious issue in the sense of being worthy of consideration by an appellate court"); Lovell v. Lovell, 276 Mass. 10, 11-12 (1931) (petition to remove default decree requires some showing that petitioner has meritorious claim or defense to assert -- "one which is worthy of judicial inquiry"); Jones v. Manns, 33 Mass. App. Ct. 485, 492-493 & n.9 (1992) (transfer of appeal filed in wrong court; case "involves meritorious issues, in the usual sense of that phrase in appellate practice," i.e., "worthy of presentation to a court" [citation omitted]); Levin v. Levin, 7 Mass. App. Ct. 501, 503-504 (1979) (stay of execution of sentence pending appeal; discussing "meritorious" standard and concluding that it connotes opposite of "frivolous"); Tisei v. Building Inspector of Marlborough, 3 Mass. App. Ct. 377, 379 (1975) (motion for leave to docket appeal late; moving party must show "a case meritorious or substantial in the sense of presenting a question of law deserving judicial investigation and discussion" [citation omitted]).

which seeks a significant change in the terms of visitation based on changed circumstances since the appointment of the guardian, is such a case.[18] Visitation, like custody, is at the core of a parent's relationship with a child; being physically present in a child's life, sharing time and experiences, and providing personal support are among the most intimate aspects of a parent-child relationship. For a parent who has lost (or willingly yielded) custody of a child temporarily to a guardian, visitation can be especially critical because it provides an opportunity to maintain a physical, emotional, and psychological bond with the child during the guardianship period, if that is in the child's best interest; and in cases where the parent aspires to regain custody at some point, it provides an opportunity to demonstrate the ability to properly care for the child. See generally L. Edwards, Reasonable Efforts: A Judicial Perspective, at 41-47 (2014); M. Smariga, American Bar Association Center on Children and the Law & ZERO TO THREE Policy Center, Visitation with Infants and Toddlers in Foster Care: What Judges and Attorneys Need to Know (2007).

---

[18] In the Probate and Family Court, C.L.'s case involved a petition to modify the guardianship by changing the terms of the visitation. Obviously, not all modification petitions concern visitation. Petitions that seek other changes to the guardianship -- for example, changes in child support or other strictly financial matters -- will not necessarily implicate the same core parent-child concerns.

For these reasons, and considering the due process factors discussed above, we hold that an indigent parent who petitions to modify the terms of a guardianship by seeking a substantial change in the provisions for visitation, like a parent petitioning to remove a guardian and regain custody, is entitled as a matter of due process to counsel, and to be so informed, provided the parent presents a meritorious claim.

3. Other issues. The plaintiffs and amici raise a host of additional issues that go well beyond the issues raised by the plaintiffs' complaint. For example, the plaintiffs argue, in addition to their due process claim, that they have a right to counsel based on equal protection principles; they also ask us to "issue a directive" definitively resolving certain questions concerning the burden of proof and the elements of proof on petitions to remove a guardian under G. L. c. 190B, § 5-212. The children, who filed no pleadings of their own in the county court, and who were brought into the case for the limited purpose of addressing a question of standing on their right to be heard on the plaintiffs' claims, see note 3, supra, argue that they have their own right to counsel in cases like this. And the amicus Committee for Public Counsel Services asks us to decide a number of other issues in order to "clarify the parameters of the right to counsel for indigent parents in guardianship cases."

These matters are not properly before us, and we therefore decline to address them. Some of these questions will undoubtedly need to be resolved in future cases where they are properly raised and preserved in the trial court and fully briefed on appeal,[19] and where the records for deciding them are fully developed. Others might appropriately be addressed by court rules and policies established by the Probate and Family Court or by amendments to the governing statutes.

4. Development of court rules and policies. Our decision in Guardianship of V.V., decided approximately fifteen months ago, recognized a parent's due process right to counsel in guardianship of minor cases where none previously existed, on the initial petition for appointment of a guardian. The Probate and Family Court has taken a number of steps since then to implement that right. Our decision today establishes a right to counsel beyond that, on a parent's petition to remove a guardian and regain custody of the child or to modify the guardianship in order to make a significant change in visitation. Recognizing

---

[19] We note, for example, that no guardian has submitted a brief in the case before us. Some of the other issues we are asked to decide would clearly affect a guardian's rights and interests.

that additional steps will be needed to implement these rights, we offer a few thoughts and suggestions.[20]

a.   The Probate and Family Court can facilitate the process for unrepresented parents by creating forms that will help the parent to articulate -- in plain, nonlegal terms -- the reasons why he or she believes the guardian should be removed or the visitation modified, and the facts on which he or she relies to support that claim.  Forms that promote a clear and sufficiently detailed statement from the parent will also help judges to evaluate whether the parent has stated a meritorious claim as we have described that term, such that the parent may have an attorney if he or she would like one.[21]

b.   We leave it to the Probate and Family Court to consider in the first instance whether an indigent, unrepresented parent must actually file a pro se petition to remove the guardian or

---

[20] A working group of experienced probate judges, child advocates, guardians ad litem, representatives of guardian and parent interests, and others concerned may be helpful to explore these suggestions (and other possibilities) in depth.  The Chief Justice may wish to consider convening such a group if none already exists.

[21] Nothing we have said requires that counsel actually be appointed for every indigent parent who presents a meritorious claim.  Parents must be fairly informed of the right to counsel and of the procedure for requesting counsel, but due process in these circumstances only requires that counsel actually be appointed if the parent so requests.  A parent who has been informed of the right to counsel and the procedure for requesting counsel will always have the prerogative to opt to proceed without counsel.

modify the guardianship before an attorney is appointed. Another approach might be for the parent to be allowed first to apply for counsel, and be required to state on an application for counsel form the meritorious reasons why he or she is seeking removal or modification. The judge would then be in a position to assess whether appointment of counsel is called for before the actual petition is filed. The Probate and Family Court is better equipped than this court to weigh the pros and cons of each approach initially. It would appear that either approach provides due process.

c. General Laws c. 190B, § 5-212, places no express limitation on how often a parent may file a petition to remove a guardian or to modify a guardianship. The Probate and Family Court might consider whether it is feasible and wise to create guidelines designed to discourage the filing of unnecessarily frequent petitions. For example, the court may be able to identify different classes of petitions according to what relief is being sought (e.g., removal or modification) and the bases on which the guardianships were established initially (e.g., consent, various reasons for unavailability or unfitness, etc.), and indicate frequencies with which petitions in the different classes might reasonably be expected to be filed. Petitions filed at more frequent intervals than provided by the guidelines presumptively would not merit the appointment of counsel. These

guidelines and presumptions would not be binding, since the statute appears to permit the filing of a removal or modification petition at any time, each case is different, and counsel should always be appointed for a meritorious case, but they may help to create realistic expectations for unrepresented parents as to how often, at most, they should file.[22]

d.  In deciding both Guardianship of V.V. and this case, we have found it useful to draw certain comparisons between the guardianship process under G. L. c. 190B and the care and protection process under G. L. c. 119.  We have not held, however, that all of the procedures and protections provided by statute in care and protection cases must necessarily be incorporated into private guardianship proceedings under the rubric of due process.  The two types of proceedings, while similar in some respects, are not identical.  What process is constitutionally due in guardianship cases must continue to be decided by applying the factors discussed above.

e.  Although we do not decide the question of a child's constitutional right to counsel in this case, we note the provisions of G. L. c. 190B, § 5-106 (a).  "After filing of a petition for appointment of a guardian . . . if the ward . . .

---

[22] Likewise, it may be possible in some situations for the judge, at the time the guardianship is created, to indicate when or on what conditions the parent might realistically expect to petition for removal or modification.

or someone on his behalf requests appointment of counsel; or if the court determines at any time in the proceeding that the interests of the ward . . . are or may be inadequately represented, the court shall appoint an attorney to represent the person."  Id.  The court may also appoint a "guardian ad litem . . . to investigate the condition of the ward . . . and make appropriate recommendations to the court."  G. L. c. 190B, § 5-106 (b).  We trust that judges of the Probate and Family Court will consider exercising one or both of these prerogatives in appropriate cases, especially where counsel is appointed for a petitioning parent but the judge is concerned that the petition might not be in the child's best interest.  Guardians faced with removal or modification claims should also be fairly informed that they may request counsel for the child.

Conclusion.  A judgment shall enter in the county court declaring that (a) when an indigent parent seeks, pursuant to G. L. c. 190B, § 5-212, to remove a guardian for a minor child and thereby regain custody of the child, the parent has a due process right to counsel to prosecute the petition, and to be so informed, provided the parent presents a meritorious claim for removal; and (b) similarly, when an indigent parent seeks to modify the terms of a guardianship by substantially changing the terms of visitation with the minor child, the parent also has a

due process right to counsel, and to be so informed, provided the parent presents a meritorious claim for modification.

<u>So ordered</u>.