The father appeals from a Juvenile Court judge's decision terminating his parental rights to his daughter, Aretha. On appeal, the father primarily contends that because the Department of Children and Families (DCF) failed to make sufficient efforts to reunify him with his daughter, the decree terminating his parental rights and denying posttermination contact must be vacated.[3] We affirm.
1. Background. We draw on the judge's comprehensive findings of fact, which find ample support in the record. The mother and father married in 2005 and their daughter, Aretha, was born in 2008. The three lived together until 2009, when Aretha was about fifteen months of age, and the mother and father subsequently divorced in 2011.
The father has a lengthy criminal history and domestic violence history as well as mental health diagnoses.[4] The father has had stints of incarceration and his convictions include assault by means of a dangerous weapon, assault and battery, threats to kill, and assault and battery on a child with injury to the child. Numerous G. L. c. 209A restraining orders have been taken out against the father, including by Aretha's mother, who obtained one in 2009 and one in 2013.
The incident precipitating the 2013 restraining order involved the father going to the mother's home in the night, at which time he threatened the mother and destroyed and stole her property. The responding officer and the Quincy District Court victim witness advocate filed G. L. c. 119, § 51A, reports (51A reports) as a result of this incident.[5]
The father visited Aretha sporadically after he separated from the mother, and after DCF's intervention he had multiple supervised visits with Aretha. The visits that occurred went well, with the father and Aretha initiating hugs and kisses at the end of some visits. However, Aretha expressed fear and reluctance about some of the visits and refused to attend a visit in April of 2015, resulting in DCF cancelling the visit. Then, in August, 2015, after Aretha expressed that she did not want to visit with the father, the visits were suspended, and the father agreed to the suspension.[6]
During its involvement with the family, DCF created service plans for the father. Although the father began some of the programs, he failed to follow through with the tasks, recommendations, and services established in the plans. Indeed, he completed none of them. Moreover, by May of 2015 the father refused to have any contact with DCF's social worker, telling the social worker that he did not intend to have any further contact with DCF.
Prior to the entry of the decree at issue, on August 28, 2015, the judge found both parents unfit and granted DCF permanent custody of Aretha.[7] In April, 2016, the termination case proceeded as to the father only. On January 4, 2017, the judge entered a decree terminating the father's parental rights. This appeal ensued.
2. Discussion. We review the father's claims to determine whether the judge abused her discretion or committed a clear error of law. Adoption of Imelda, 72 Mass. App. Ct. 354, 360 (2008). An abuse of discretion exists where the reviewing court determines that "the judge made a clear error of judgment in weighing the factors relevant to the decision ... such that the decision falls outside the range of reasonable alternatives" (quotation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). Here, the judge's findings are specific and detailed, and demonstrate that close attention was given to the evidence. See Adoption of Anton, 72 Mass. App. Ct. 667, 673 (2008).
a. Waiver of visitation. The father contends that the judge erred by permitting DCF to suspend his visits with his daughter during the pendency of the care and protection proceedings and then failing to take into account DCF's lack of effort to facilitate visits when making the final termination decision. The short answer to this contention is that the judge did not err because the issue was not before her. The father did not raise this issue during the course of the proceedings or otherwise preserve this issue at trial. The father did not file an abuse of discretion motion to challenge DCF's actions at the time DCF, with his agreement, suspended his visitation, or any time thereafter. See Adoption of Gillian, 63 Mass. App. Ct. 398, 408 (2005) (issue of visitation waived where parents did not raise it at trial). "Generally, issues not raised by a losing party in the trial court are not addressed on appeal, absent exceptional circumstances." Adoption of Mary, 414 Mass. 705, 712 (1993). The father argues that this case presents such an exceptional circumstance due to the fundamental importance of visitation.[8] However, as discussed below, the record does not support the father's contentions.
b. Abuse of discretion and visitation. Even assuming, arguendo, that the issue of visitation had been properly raised below, we find no abuse of discretion. As stated above, the record reflects the father's extensive criminal history, domestic violence history, mental health diagnoses, complete failure to comply with DCF's service plans, and unwillingness to work with DCF. Although certain visits went well, Aretha also expressed fear of her father and refused to visit with him.
The father's contention that DCF did not make reasonable efforts to "promote regular and frequent" visits is unavailing. 110 Code Mass. Regs. § 7.128 (2008). Here, Aretha expressed fear of her father and expressed that she did not want to attend certain visits with him, and, importantly, the father agreed to suspension of the visits. Moreover, there was evidence that Aretha "spoke about being afraid of her father and seeing her father fighting with her mother, biting and choking her mother which caused her to be frightened of him." In addition, visitation remained part of DCF's service plans for the father. Given these combined factors, the father did not demonstrate a lack of reasonable effort on DCF's part.
c. Findings of fact. The father contends that four of the judge's subsidiary factual findings are contrary to the evidence at trial. A subsidiary finding is "clearly erroneous when there is no evidence to support it, or when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quotation omitted). Custody of Eleanor, 414 Mass. 795, 799 (1993). Specifically, the father disputes the findings that "months would go by" without the father visiting Aretha, that Aretha did not want to visit with the father on a particular date, and that the father cancelled a particular visit. The father also contends that the judge should have found that the visits were terminated and not "temporarily suspended." The findings are not clearly erroneous. As detailed, supra, and when analyzed as a whole, the judge's findings are well supported by the evidence presented.
d. Termination of parental rights. The father argues that the judge's decision to terminate his parental rights was flawed. "Once a parent is found to be unfit, the judge must then ascertain whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child" (quotations omitted). Adoption of Imelda, 72 Mass. App. Ct. at 360. Here, the judge fully and properly considered the required factors set forth in G. L. c. 210, § 3 (c ), and found factors (ii), (iii), (iv), (vi), (viii), and (xi) applicable to her determination.
Citing Petition of Boston Children's Serv. Ass'n to Dispense with Consent to Adoption, 20 Mass. App. Ct. 566 (1985), the father contends that the judge failed to take into account his support for the guardianship petition filed by Aretha's maternal grandparents. This argument is without merit. The father's testimony that he would "walk away" if Aretha were placed with a family member hardly shows that his continued involvement in her life would further her best interests. Contrast id. at 572-574 (while mother recognized that she was not capable of having physical custody, she "made every effort to maintain contact with the children" and demonstrated capacity to assist in decisions about children's welfare). The judge did not abuse her discretion in terminating the father's parental rights.
Decree affirmed.

The child did not submit a brief but instead submitted an amicus brief in support of visitation with the father. We allow the amicus brief only to the extent that it supports the arguments made by the father.

The father has received diagnoses of attention deficit disorder and bipolar disorder and has been prescribed medications for treatment.

Another 51A report alleging neglect of Aretha by the mother had been supported in November of 2013 following an emergency G. L. c. 119, § 51B, investigation (51B investigation). In September, 2014, the DCF social worker assigned to the family filed a 51A report alleging the mother's neglect of Aretha. A 51B investigation followed, an emergency removal of Aretha was conducted, and she was placed with her maternal great aunt. This underlying care and protection petition was then filed.

The father did not file an abuse of discretion motion against DCF or seek other relief at this time.

Neither the parents nor Aretha appealed this determination.

The father's counsel emphasized the importance of visitation in her brief and at oral argument, noting studies and cases that express the value of visitation. The Supreme Judicial Court recently emphasized the importance of visitation. See Care & Protection of Walt, 478 Mass. 212, 229 (2017) ; L.B. v. Chief Justice of the Probate & Family Court Dep't, 474 Mass. 231, 242 (2016).